UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————

No. 18-CR-10364-DPW

———————

UNITED STATES

v.

GENOVEVA ANDRADE,
Defendant

———————

**DEFENDANT'S MOTION TO SEVER**
**(WITH INCORPORATED MEMORANDUM)**

Pursuant to Fed. R. Crim. P. 8(b) and 14(a), the defendant Genoveva Andrade ["Andrade"] hereby moves to sever her trial from that of lead defendant Jasiel F. Correia, II ["Correia"]. Severance is required because offenses charged in the indictment are not part of the "same series of acts" as required by Fed. R. Crim. P. 8(b). Severance is also appropriate under Fed. R. Crim. P. 14(a) because substantial prejudice will result from a joint trial.

In support of this motion, Andrade states as follows:

**I.   SUMMARY OF ALLEGATIONS.**[1]

On October 4, 2018, Correia, the former mayor of Fall River, Massachusetts, was named alone in a 13-count indictment charging him with nine counts of wire fraud (Counts 1 through 9) and four counts of filing of false tax returns (Counts 10 through 13). *See* Document No. 1.[2]

---

[1] Undersigned counsel notes that the government continues to produce discovery. Prior to the filing of this motion, counsel did not have the opportunity to review discovery produced under cover letters dated January 10 and 16, 2020. As such, counsel respectfully reserves the right to modify or supplement this motion.

[2] Correia was elected in November 2015 and reelected in November 2017. Document No. 1, ¶¶2-3. He was not reelected in November 2019. Andrade was Correia's chief of staff from

On September 5, 2019, Correia was named, again alone, in a 24-count first superseding indictment charging him with nine counts of wire fraud (Counts 1s-9s), four counts of filing false tax returns (Counts 10s-13s), five counts of conspiracy to extort (Counts 14s, 16s, 18s, 20s, and 22s), five counts of extortion (Counts 15s, 17s, 19s, 21s, and 23s), and one count of soliciting a bribe from Andrade (Count 24s). *See* Document No. 53.

On September 19, 2019, Correia and Andrade were named together in a 26-count second superseding indictment. Correia is charged as set forth above. Andrade is charged with two counts of conspiracy to extort (Counts 20ss and 22ss) and two counts of extortion (Counts 21ss and 23ss). She is also charged with bribing Correia (Count 25ss) and making false statements to investigators (Count 26ss). *See* Document No. 69.

Like the original and first superseding indictments, the second superseding indictment outlines a scheme involving a company called SnoOwl, which Correia started in 2012 to develop an app designed to connect local businesses with consumers. According to the government, between 2013 and May 2017, Correia defrauded investors in SnoOwl by making false representations and diverting substantial sums of money to himself. In 2015, he filed tax returns for 2013 and 2014 that failed to disclose SnoOwl. After he learned that he was under investigation in May 2017, he filed amended tax returns for 2013 and 2014 that included false representations. Document No. 69, ¶¶1-56, 113-118 [hereinafter, "the SnoOwl Scheme"].

The second superseding indictment outlines three other schemes. First, according to the government, Correia, as mayor, extorted four marijuana vendors ("MJ Vendor #1," "MJ Vendor #2,"

---

November 2017 to December 2018, leaving in January 2019 to run his March 2019 campaign. Document No. 69, ¶66.

"MJ Vendor #3," "MJ Vendor #4") of substantial sums of money in exchange for issuance of the "non-opposition letters" required to operate marijuana dispensaries in Fall River, from June 2016 to March 2019. Andrade is alleged to have participated in the extortion of MJ Vendor #4, from June to July 2018. Specifically, the government alleges that Andrade was present for meetings between Correia and MJ Vendor #4 in which they discussed the issuance of a non-opposition letter. At a meeting in June, Correia told MJ Vendor #4 that he would issue a non-opposition letter for $250,000. MJ Vendor #4 reacted nervously. Andrade asked if she could use the bathroom. Correia and MJ Vendor #4 then agreed on a sum. As they left, Andrade asked MJ Vendor #4 if everything was alright and said "you're family now." Document No. 69, ¶¶57-85, 119-126 [hereinafter, "the Marijuana Vendor Scheme"].

Second, according to the government, Correia extorted a building owner ("Middleman #1")[3] of cash and a Rolex in exchange for assistance with the permits and excavation necessary to activate a water line at a commercial property, 379 Kilburn Street, from January to September 2017. Andrade is alleged to have participated in July 2017. Specifically, the government alleges that, Correia and Andrade delivered a $3,900 check to Middleman #1 for payment of rent for Correia's campaign office. Andrade was present when Correia directed Middleman #1 to give him back $3,900 in cash, which Middleman #1 did. Andrade purportedly said "do not be giving cash out in front of the windows." Document No. 69, ¶¶86-97, 119-126 [hereinafter, "the Kilburn Scheme"].

Third, according to the government, between November 2017 and July 2018, Correia

---

[3] Middleman #1 is alleged to have been a friend of Correia's and investor in SnoOwl. *See* Document No. 69, ¶69. He is also alleged to have participated in the extortion of Marijuana Vendors #1 and #2. "Mayoral Aid #1" is alleged to have been a friend of Correia and Middleman #1 and an investor in SnoOwl. *See* Document No. 69, ¶67. Mayoral Aide #1 is also alleged to have participated in the extortion of Marijuana Vendors #1 and #2. *See* Document No. 69, ¶¶67, 74-79.

solicited and accepted a bribe from Andrade, totaling $22,800, in exchange for Correia's agreement to appoint and keep Andrade as his Chief of Staff. Document No. 69, ¶¶98-110, 127-130 [hereinafter, "the Chief of Staff Scheme"].

As in the original and first superseding indictments, in the second superseding indictment, Andrade is **not** alleged to have had any knowledge of or involvement in the SnoOwl Scheme. *See* Document No. 69, ¶¶1-56, 113-118.[4]

## II. SUMMARY OF LAW.

### A. Misjoinder Under Fed. R. Crim. P. 8(b).

Guilt is both individual and personal. *Kotteakos v. United States*, 328 U.S. 750, 772 (1946). A defendant has "...the right not be tried en masse for the conglomeration of distinct and separate offenses committed by others...." *Id*. at 775. Prejudice inheres in the joinder of defendants. "Because of the natural tendency to infer guilt by association, a defendant may suffer by being joined with another allegedly 'bad man.'" *King v. United States*, 355 F.2d 700, 703 (1st Cir. 1966). *See United States v. Turkette*, 632 F.2d 896, 906 (1st Cir. 1980), *vacated on other grounds*, 452 U.S. 576 (1981).

Yet joinder of defendants promotes judicial economy, conserves prosecutorial resources, and avoids inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 537-538 (1993). *See Turkette*, 632 F.2d at 906; *King*, 355 F.2d at 703. Fed. R. Crim. P. 8 attempts to balance the competing practical benefit to the court, government, and public with the prejudice inherent in the joinder of defendants by permitting joinder only if certain requirements are met. *Turkette*, 632 F.2d at 907. Rule 8 "sets the limits of tolerance" beyond which the inherent prejudice outweighs the practical benefit,

---

[4] As noted, Andrade is also charged with making false statements to investigators. As alleged, the statements appear to relate to the Marijuana Vendor and Chief of Staff Schemes, not the SnoOwl Scheme. *See* Document No. 69, ¶112.

and any joinder which does not fall within Rule 8 is improper. *King*, 355 F.2d at 703.

Fed. R. Crim. P. 8(b) governs when an indictment charges multiple defendants and offenses. *Turkette*, 632 F.2d at 907, *citing*, *inter alia*, *King*, 355 F.2d at 704. It provides that an indictment may charge multiple defendants if they

> ...are alleged to have **participated** in the same act or transaction, or in the **same series of acts** or transactions, **constituting an offense or offenses**.

Fed. R. Crim. P. 8(b)(*bold supplied*).[5]

As Chief Judge Aldrich explained more than half a century ago,

> Rule 8(b) is not to be implemented by Rule 8(a). For example, a single defendant, A, may be charged in one indictment with acts X, Y and Z, simply because they are similar offenses. Or he might be charged in one indictment with defendant B for offense Z if it were a joint offense. This fact, however, does not automatically mean that B can be joined with A as to offenses X and Y.

*King*, 355 F.2d at 704-705. Under Rule 8(b), in an indictment charging multiple offenses, joinder of defendants is not proper "unless the criminal acts alleged *in all counts* [are] part of the *same series* of acts or transactions." *United States v. Josleyn*, 99 F.3d 1182, 1188 (1st Cir. 1996)(italics in original)(assuming without deciding that trial court erred in ruling that joinder of defendants was proper because both were charged in a conspiracy count that did not encompass all substantive offenses alleged in indictment).

"Same series of acts" means something more than "similar acts." *King*, 355 F.2d at 703. *See Turkette*, 632 F.2d at 907. In *King*, Chief Judge Aldrich wrote:

---

[5] Rule 8(a) governs when and indictment charges one defendant with multiple offenses. *See Turkette*, 632 F.2d at 906-907 (and cases cited). It provides that an indictment may charge multiple offenses if they "...are of the same or similar character, or are based on the same act or transactions, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

>   this possibility of benefit should explicitly appear from the indictment or from other representations by the government before trial. Classic examples of such a benefit are when there is an overlapping of issues, as, for example, when some defendants are charged with transporting stolen goods in interstate commerce, and others are charged with receiving the goods, so stolen and transported..., or when defendants are charged with conspiracy to conceal a crime that part of their number are charged with committing.... Where, however, there are no presumptive benefits from joint proof of facts relevant to all the acts or transactions, there is no 'series,' Rule 8(b) comes to an end, and joinder is impermissible.

355 F.2d at 705 (reversing defendant's convictions where he proceeded to joint trial for drug offenses on one date with defendant who was also charged with drug offenses on other dates: "As a matter of law, the offenses on the other dates not being a connected series of acts, and King being in no way involved, there was no basis for requiring him to be tried in conjunction therewith"). Stated otherwise, under Rule 8(b), "some relatedness between the offenses is necessary." *Turkette*, 632 F.2d at 908. Relatedness "can be established by demonstrating that essentially the same facts must be shown for each of the consolidated crimes." *Id.*

### B.  Prejudicial Joinder Under Fed. R. Crim. P. 14(a).

Even if joinder of defendants is proper under Rule 8(b), Fed. R. Crim. P. 14(a) affords the Court discretion to sever them and order separate trials if joinder "appears to prejudice a defendant or the government...." *See* Fed. R. Crim. P. 14(a).[6]

The Supreme Court has said that severance is appropriate under Rule 14(a) if there exists "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. *See also United States v. Richardson*, 515 F.3d 74, 81 (1st Cir. 2008)("garden variety" prejudice

---

[6]  The Court also has the discretion to sever defendants and order separate trials pursuant to its "inherent right and duty to manage its own calendar." *United States v. Leichter*, 160 F.3d 33, 35 (1st Cir. 1998).

insufficient). Joinder of defendants can raise a serious risk of prejudice. Thus, evidence may be admitted against one defendant that would otherwise be inadmissible against the other defendant. And, evidence of one defendant's wrongdoing may lead the jury to erroneously convict the other defendant. This risk is heightened when the case is complex and the defendants have varying degrees of culpability. *Zafiro*, 506 U.S. at 539-540.

In deciding whether to exercise its discretion under Rule 14(a), the Court may consider such factors as the number of defendants and counts; the complexity of the indictment; the estimated length of trial; disparities in the amount and type of proof offered against the defendants; variances in their degrees of culpability; possible conflicts between defenses and trial strategies; and, prejudice from evidence admitted against one that would be inadmissible against the other. *United States v. Gallo*, 668 F.Supp. 736, 749 (E.D.N.Y. 1987)(Weinstein, C.J.). No single factor is dispositive. *Id*. Ultimately, the Court must decide whether the jury would be "reasonably able" to consider evidence as to each defendant. *Id*.

### III.   APPLICATION OF LAW TO ALLEGATIONS.

   **A.   Severance of Andrade's Trial from Correia's Trial Is Required Under Fed. R. Crim. P. 8(b).**

Andrade has not been charged in connection with the SnoOwl Scheme. The government has not alleged that she had any knowledge of or involvement in the SnoOwl Scheme at all. As such, Andrade and Correia have been properly joined under Fed. R. Crim. P. 8(b) only if the SnoOwl Scheme and the Marijuana Vendor, Kilburn, and Chief of Staff Schemes were part of the "same series of acts." *See* Fed. R. Crim. P. 8(b). *See also Josleyn*, 99 F.3d at 1188; *King*, 355 F.2d at 703-705. Clearly, they were not. The SnoOwl Scheme involved Correia's conduct as a private citizen in

running his own company. The Marijuana Vendor, Kilburn, and Chief of Staff Schemes involved Correia's conduct as a public official in running Fall River.

The SnoOwl Scheme began three years before Correia was even elected mayor. But for his continued neglect and concealment of SnoOwl from 2015 to May 2017, that scheme would have ended before he began extorting marijuana vendors in mid-2016 or demanding a cut of Andrade's earnings in late-2017.[7]

Notably, the second superseding indictment does not incorporate the allegations pertaining to the SnoOwl Scheme into the charges pertaining to the Marijuana Vendor, Kilburn, and Chief of Staff Schemes (and vice versa),[8] suggesting that the government may not view evidence of the SnoOwl Scheme as necessary to prove the Marijuana Vendor, Kilburn, Chief of Staff Schemes (and vice versa). *See Turkette*, 632 F.2d at 908; *King*, 355 F.2d at 704. It is not. The government does not need to introduce evidence that Correia, as a private citizen, previously defrauded investors in his own company in order to prove that Correia, as mayor, later extorted marijuana vendors and a building owner and solicited a bribe from his employee. Conversely, the government does not need to introduce evidence that Correia, as mayor, later extorted marijuana vendors and a building owner and solicited a bribe from his employee to prove that Correia, as a private citizen, previously

---

[7] Document No. 69, ¶¶1-2, 8-9 (Correia started SnoOwl in late 2012 and was elected mayor in November 2015); ¶¶114, 120, 124, 128 (latest charged wire fraud in May 2015; earliest charged extortion in June-September 2016; bribery in November 2017).

[8] Document No. 69, ¶¶1-56, 113-118 (outlining allegations pertaining to SnoOwl Scheme and incorporating only those allegations into charges of wire fraud and filing false tax returns); ¶¶57-97, 119-126 (outlining allegations pertaining to Marijuana Vendor and Kilburn Schemes and incorporating only those allegations into charges of conspiracy to extort and extortion); ¶¶98-110, 127-130 (outlining allegations pertaining to Chief of Staff Scheme and incorporating only those allegations into charges of bribery).

defrauded investors in his own business. This case is wholly unlike those "classic examples" where "there are presumptive benefits from joint proof of facts relevant to all the acts of transactions," such as where the indictment charges some defendants with covering up the crime that others allegedly committed. *King*, 355 F.2d at 705.

To be sure, the SnoOwl, Marijuana Vendor, Kilburn, and Chief of Staff Schemes shared an objective – to line Correia's pockets. In addition, Middleman #1 and Mayoral Aide #1 may be able to testify about the SnoOwl, Marijuana Vendor, and Kilburn Schemes. A shared objective and common witnesses do not, however, render these otherwise unrelated schemes part of the "same series of acts" for purposes of Rule 8(b). *Compare United States v. Shaw*, 113 F.Supp.2d 152, 158-161, 164 (D.Mass. 2000)(Keeton, J.)(defendant Shaw charged with conspiracy to commit offense against United States for offering kickbacks for services reimbursable by Medicare; defendants Aird and Verde charged with conspiracy to defraud United States by inducing purchases of unnecessary blood tests that were not reimbursable by Medicare; rejecting government's reliance on shared employment and objective and common witnesses in holding that defendants were improperly joined under Rule 8(b) and ordering that they proceed to trial separately).

"There [is] no 'series,' Rule 8(b) comes to an end, and joinder is impermissible." *King*, 355 F.2d at 705. Andrade's trial should be severed from Correia's.[9]

---

[9] The Court has suggested severing the SnoOwl Scheme. Andrade submits that such relief would not eliminate the serious risk of prejudice from her joint trial with Correia addressed in the following section. Andrade further notes that Correia has not argued that the SnoOwl Scheme is improperly joined with the remaining schemes under Rule 8(a), which sets forth a different standard (*i.e.*, multiple offenses properly joined if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan"). Nor, presumably, would it be in his best interests or in the interests of judicial and prosecutorial economy to require Correia to proceed to trial twice instead of requiring Correia and Andrade to each proceed to trial once, on the allegations levied against them individually.

**B.     Severance of Andrade's and Correia's Trials Is Appropriate Under Fed. R. Crim. P. 14(a).**

Even if properly joined under Fed. R. Crim. P. 8(b), Andrade's trial should be severed from Correia's under Fed. R. Crim. P. 14(a). Given the nominal factual overlap, interests of judicial and prosecutorial economy should not weigh heavily in the balance. The government will presumably have to rely on the testimony of mostly different witnesses to prove the SnoOwl Scheme and the Marijuana Vendor, Kilburn, and Chief of Staff Schemes, whether Andrade and Correia proceed to trial jointly or separately. On the other hand, Andrade's interests should weigh heavily. The government would be able to present copious evidence of the SnoOwl Scheme at a joint trial against Correia that it would not otherwise be able to present at a separate trial against Andrade. To prove wire fraud, the government will presumably call the four or more defrauded investors to testify about Correia's false representations and their reliance on them. The government will presumably call one or many witnesses to testify about Correia's neglect of SnoOwl and one or many witnesses to testify about his bank activity and spending habits. To prove tax fraud, the government will presumably call an expert to testify about the requirements for filing returns. The SnoOwl evidence will be substantial and complex. And it will have nothing to do with Andrade, who had nothing to do with that scheme as alleged. *Compare United States v. Perry*, 37 F.Supp.3d 546, 559-560 (D.Mass. 2014)(Casper, J.)(finding risk of prejudicial spillover from joinder of racketeering and extortion charges to other mail fraud and theft charges where facts supporting separate sets of counts distinct).

This case presents the risk of special prejudice. Correia is the former mayor of Fall River. He was indicted while in office, twice. As alleged, Correia was the mastermind of and driving force behind all of the schemes. Once again, Andrade is not alleged to have participated in or even known

about the SnoOwl Scheme. She is alleged to have participated in the remaining schemes. But, even according to the government, her involvement was minimal. For instance, Correia allegedly extorted four marijuana vendors. Andrade allegedly joined meetings between Correia and just one marijuana vendor. Document No. 69, ¶¶74-85. Given the disparity in the amount and type of proof that would be offered against them at a joint trial and the variance in their degrees of culpability, the risk that the jury will convict Andrade, wrongly, because of her association with Correia is simply too great.[10/]

In sum, even if properly joined under Rule 8(b), because substantial prejudice would result from a joint trial, the Court should exercise its discretion under Rule 14(a) to sever Andrade's trial from Correia's.

## RELIEF SOUGHT

Pursuant to Fed. R. Crim. P. 8(b) and Fed. R. Crim. P. 14(a), the Court should sever Andrade's trial from that of Correia and order that they proceed to trial separately.

---

[10/] For the same reasons, the jury would be hard pressed to follow instructions regarding the consideration of evidence admitted as to Correia only or the need to decide Andrade's guilt independently. *Compare Perry*, 37 F.Supp.3d at 559-560 (finding risk of prejudice notwithstanding availability of limiting instructions).

Respectfully submitted,

**GENOVEVA ANDRADE**

By her counsel,

/s/ Charles W. Rankin
Charles W. Rankin
BBO No. 411780
crankin@rankin-sultan.com
Rankin & Sultan
151 Merrimac Street, Suite 201
Boston, MA 02114
(617)720-0011

January 17, 2020

**CERTIFICATE OF SERVICE**

    I hereby certify that this document(s) filed through the Electronic Filing System (CM/ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on January 17, 2020.

/s/Charles W. Rankin
Charles W. Rankin