UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————

No. 18-CR-10364-DPW

———————

UNITED STATES

v.

JASIEL CORREIA and GENOVEVA ANDRADE,
Defendants

———————

**DEFENDANTS' OBJECTIONS TO JANUARY 2021 TRIAL DATE**

During the pretrial conference held on October 13, 2020, undersigned counsel for defendants objected to the Court's scheduling of the joint trial for January 13, 2021 in light of the COVID-19 pandemic. The Court directed counsel to file a memorandum addressing concerns by this date, October 23, 2020. In further support of the objection, counsel states:

**I.    STARTING A JOINT TRIAL ON JANUARY 13, 2021 WILL UNNECESSARILY JEOPARDIZE THE HEALTH OF PARTICIPANTS.**

As the Court knows, COVID-19 is virulent and poses serious health risks to anybody who becomes infected with it. Risk of grave illness and death is especially acute for those of us who are over 65 years old and those of us who have underlying conditions, including such prevalent conditions as high blood pressure and diabetes.[1]

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (according to Center for Disease Control (CDC), people with these conditions are at increased risk of severe illness: cancer, chronic kidney disease, COPD, heart conditions such as heart failure, coronary artery disease, or cardiomyopathies, immuno-compromised state from solid organ transplant, obesity, sickle cell disease, smoking, Type 2 diabetes; people with the following conditions might be at increased risk of severe illness: asthma, cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immuno-compromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune

As the Court also knows, COVID-19 continues to run rampant across the country. As of October 23, 2020, more than 8,455,000 people have become infected and at least 223,000 have died from COVID-19 in the United States. Yesterday's nationwide tally of new cases was 75,064. Over the past week, there have been an average of 62,168 new cases per day, an increase of 32% from the average new cases per day two weeks ago.[2]

Likewise, COVID-19 continues to run rampant in Massachusetts. As of October 22, 2020, 143,927 people have become infected and 9,589 people have died from COVID-19 here.[3]

Indeed, over the past few weeks, Massachusetts has seen a marked increase in new cases per day. For just 13 of 30 days in September, more than 400 new cases were reported. For all 23 days in October so far, more than 400 new cases were reported. In 10 of those 23 days, more than 700 new cases were reported.[4] Yesterday's statewide tally of new cases – 986 – was the highest since May 24, 2020.[5] Today, there were 968 new cases.

---

weakening medicines; neurological disorders such as dementia; liver disease; overweight; pregnancy; pulmonary fibrosis; thalassemia; type 1 diabetes)(last visited October 21, 2020); https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (according to CDC, risk of severe illness from COVID-19 increases with age; 8 out of 10 COVID-19 deaths reported in United States among adults over 65 years old)(last visited October 21, 2020).

[2] https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited October 23, 2020).

[3] https://www.mass.gov/doc/covid-19-dashboard-october-22-2020/download (last visited October 23, 2020).

[4] A list of the tallies of new confirmed COVID-19 cases per day, from September 1, 2020 through October 23, 2020, appears at the end of this memorandum.

[5] *See* Martin Finucane and Jeremy C. Fox, "Another ominous coronavirus sign: Massachusetts cases reach 5-month high," *Boston Globe* (October 22, 2020), available at: https://www.bostonglobe.com/2020/10/22/nation/mass-coronavirus-case-numbers-jump-986-30-deaths-also-reported/(last visited October 23, 2020).

On October 22, 2020, Massachusetts officials designated 77 cities and towns, including Fall River, as high risk for COVID-19 infection.[6] That tally is up from 63 cities and towns one week ago and 23 cities and towns two weeks ago.[7] Prospective jurors will surely be called from high risk cities and towns. Just as surely, parties, attorneys, judges, clerks, court reporters, interpreters, U.S. Marshals, and spectators will be arriving to the courthouse from high risk cities and towns each and every morning.[8]

Of course, the courthouse itself is located in a high risk city. Boston has experienced a recent spike. Its 7-day average of COVID-19 positive test rate is 5.7%, up from 4.5% a week ago. In light of this spike, Boston Public Schools have returned to fully remote learning.[9]

Undoubtedly, the Court has dedicated substantial time, energy, and resources to crafting and implementing measures intended to prevent and curb the spread of COVID-19 in its courtrooms and hallways. While necessary, those measures may not be sufficient. For one, the Court has indicated that it will rely on participants in this trial to self-report symptoms of COVID-19. A study published

---

[6] A list of the 77 cities and towns appears at the end of this memorandum.

[7] *See* Asher Klein and Mike Pescaro, "Revamped Coronavirus Risk Map: Mass. Up to 77 Communities in Red," *NBC Boston* (October 22, 2020), available at: https://www.nbcboston.com/news/coronavirus/revamped-coronavirus-risk-map-mass-up-to-77-communities-in-the-red/2216477/ (last visited October 23, 2020).

[8] The Court may be aware that some 100 people are now infected with COVID-19 at the Wyatt Detention Center. It has been reported that the Warden at Wyatt testified before the District Court in Rhode Island that he suspects that the virus was brought into the institution by an asymptomatic Marshal or employee.

[9] *See* Marc Fortier and Abbey Niezgoda, "Boston Public Schools Shift to All Remote Learning Due to Spike in COVID Cases," *NBC Boston* (October 21, 2020), available at: https://www.nbcboston.com/news/education/boston-public-schools-shift-to-all-remote-learning-due-to-spike-in-covid-cases/2215661/ (last visited October 23, 2020).

in September 2020 based upon data from March, April, and June 2020 suggests that while the majority of infected people will not, 20% of infected people may remain asymptomatic throughout the course of infection.[10] Based upon its current "best" estimate, the CDC suggests that 40% of infected people may remain asymptomatic throughout the course of infection. The CDC also suggest that, on average, 6 days elapse between exposure to the virus and the onset of symptoms, if any.[11] Whether symptomatic, pre-symptomatic, or asymptomatic, an infected person can transmit COVID-19 to another person. Based upon its current "best" estimate, the CDC suggests that asymptomatic people are 75% as infectious as symptomatic people. Most significantly, the CDC estimates that **half** of all transmissions occur **before** the onset of any symptoms.[12] Thus, there could be somewhere between a 1-in-5 and a 2-in-5 chance that, if a participant in this trial becomes infected, he or she will not have symptoms to self-report at all. There is also a very good chance that he or she will not develop those symptoms until it is too late to prevent or curb the spread.[13]

---

[10] *See* Diana Buitrago-Garci et al., "Occurrence and transmission potential of asymptomatic and presymptomatic SARS-CoV-2 infections: A living systematic review and meta-analysis," *PLOS MEDICINE* (September 22, 2020), available at: https://journals.plos.org/plosmedicine/article?id=10.1371/journal.pmed.1003346 (last visited October 22, 2020).

[11] https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited October 22, 2020).

[12] https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited October 22, 2020).

[13] Temperature checks will not necessarily solve this problem. A study released in June 2020 confirmed that fever is one of the most prevalent symptoms of COVID-19. But, it is not a universal symptom. It was reported in 78% of cases. *See* Michael C. Grant et al., "The prevalence of symptoms in 24,410 adults infected by the novel coronavirus (SARS-CoV-2; COVID-19): A systematic review and meta-analysis of 148 studies from 9 countries," PLOS ONE (June 23, 2020), available at: https://journals.plos.org/plosone/article/file?type=printable&id=10.1371/journal.pone.0234765 (last visited October 23, 2020).

The pandemic seems to be getting worse. And, it appears likely that the pandemic will continue to get worse before it gets better. According to the University of Washington's Institute for Health Metrics and Evaluation (IHME), right now, the United States averages roughly 700 deaths per day. By November 1, 2020, the United States could have around 830 deaths per day; by December 1, 2020, around 1,400 deaths per day; and, by January 1, 2021, around 2,200 deaths per day. The IHME projects 2,366 deaths on January 13, 2020.[14] Daily deaths in mid-January could rival daily deaths in mid-April 2020, the deadliest phase of the pandemic to date.[15] Of course, if mask and social-distancing mandates ease in Massachusetts and elsewhere, these already grim tallies will be far, far more grim.[16] This is particularly so given that COVID-19 vaccines are not projected to be available to the entire American public until April 2021.[17]

In this case, lead counsel for both defendants are over 70 years old.  Andrade's counsel has spent seven months diligently avoiding putting himself in risky situations.  It is extremely unfair to force him to decide whether to seek leave to withdraw from representation of his client when there is really no good reason to force the case to trial.  Moreover, it is not practical to wear a mask for an extended period of time.  Counsel has tried to wear a mask all day long for the last three days.  It

---

[14]     https://covid19.healthdata.org/united-states-of-america?view=daily-deaths&tab=trend (last visited October 22, 2020).

[15]     *Id*.

[16]     *Id*.

[17]     *See* Jamie Ducharme, "COVID-19 Vaccines Should be Available to the General Public by April 2021, Health Officials Say," *TIME* (October 21, 2020), available at: https://time.com/5902460/covid-19-vaccines-spring-2021/ (reporting based on statements by U.S. Department of Health and Human Services Secretary Alex Azar at October 21, 2020 press briefing)(last visited October 22, 2020).

is not something that he will be able to do for a ten day trial.

II. **STARTING A JOINT TRIAL ON JANUARY 13, 2021 WILL UNNECESSARILY INFRINGE THE DEFENDANTS' RIGHT TO A PUBLIC TRIAL BEFORE A JURY SELECTED FROM A FAIR CROSS-SECTION OF THE COMMUNITY.**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to trial by a jury selected from a fair, representative cross-section of the entire community. *Ramos v.Louisiana*, --- U.S. ---, 140 S.Ct. 1390, 1402 n. 47 (2020), *citing*, *inter alia*, *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975); *Smith v. Texas*, 311 U.S. 128, 130 (1940). *See United States v. Royal*, 174 F.3d 1, 5-6 (1st Cir. 1990). *See also* 28 U.S.C. §§ 1861, 1862. As noted, the risk of severe illness from COVID-19 increases with age. Studies also suggest that the virus more frequently and seriously impacts non-White people. Thus, for Asian people compared to White people, cases are 1.1 times higher and hospitalizations are 1.3 times higher. For Hispanic or Latino people compared to White people, cases are 2.8 times higher; hospitalizations are 4.6 times higher; and, deaths are 1.1 times higher. For Black or African American people compared to White people, cases are 2.6 times higher; hospitalizations are 4.7 times higher; and, deaths are 2.1 times higher.[18] Jury selection as the pandemic drags on and likely worsens may well disproportionately exclude prospective jurors who are older and prospective jurors who are members of minority racial and ethnic groups.[19]

The Sixth Amendment also guarantees criminal defendants the right to a public trial. A total

---

[18] https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (last visited October 22, 2020).

[19] During the October 13, 2020 pretrial conference, the Court indicated that it would provide information to the parties regarding jury impanelment in the trials that have been conducted during the pandemic. Undersigned counsel respectfully reserves the right to supplement this memorandum upon review of such information.

closure of the courtroom for trial is structural error. *Weaver v. Massachusetts*, --- U.S. --- 137 S.Ct. 1899, 1909 (2017); *Waller v. Georgia*, 467 U.S. 39, 45 (1984). *See United States v. DeLuca*, 137 F.3d 24, 33-34 (1st Cir. 1998). *Cf. Press-Enter Co. v. Superior Court of Calif., Riverside Cnty.*, 464 U.S. 501, 505 (1984)(First Amendment right of press and public). The Court has indicated that only 26 people will be allowed inside the courtroom during this trial. Assuming the presence of fourteen jurors, one judge, one courtroom clerk, one law clerk, one court reporter, two counsel for the government, one paralegal or case agent for the government, two defendants, three or four defense counsel, a one court officer, and a witness, the tally of people already exceeds that limit. Necessarily, spectators who want to enter the courtroom and observe the trial firsthand, including the defendants' family members, will be denied entry.

    Other courts have recognized that COVID-19 restrictions, including requiring face masks, social distancing, temperature checks, filling out questionnaires before entry into a courtroom, and using live video and audio streaming, constitute at least a "partial closure" under Sixth Amendment jurisprudence. *See United States v. Donziger*, 2020 WL 4747532, *3 (S.D.N.Y. Aug. 17, 2020)(Preska, J.), *citing United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005). *See also United States v. Fortson*, 2020 WL 4589710, *2 (M.D. Ala. Aug. 10, 2020)(Watkins, J.). *Accord DeLuca*, 137 F.3d at 33 (screening and identification procedure for spectators constituted "partial closure" requiring the government to establish "substantial" interest). While there is no doubt a "substantial" interest in preventing or curbing the spread of COVID-19, if a total or partial closure can be avoided by continuing the trial from the winter of 2021, then it should be avoided.

### III. CONDUCTING A TRIAL WHILE EXCLUDING THE DEFENDANTS' FAMILY AND FRIENDS VIOLATES THE DEFENDANTS' SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL.

As noted above, the Sixth Amendment guarantees the defendants the right to a public trial. A component of the right to a public trial is that the defendants have a right to have their family and friends attend the trial. The First Circuit has recognized as much. *United States v. Agosto-Vega*, 617 F.3d 541, 548 (1st Cir. 2010), stating that "courts should not minimize the importance of a criminal defendant's interest in the attendance and support of family and friends." *See also United States v. Laureano-Perez*, 797 F.3d 45, 79 (1st Cir. 2015). "A defendant has a clear rights to have his family present during proceedings . . ."

In fact, the Supreme Court has emphasized the importance of the attendance of family and friends to secure the public trial rights of the accused, as protected by the Sixth Amendment:

> But, unless in Michigan and in one-man grand jury contempt cases, no court in this country has ever before held, so far as we can find, that an accused can be tried, convicted, and sent to jail, when everybody else is denied entrance to the court, except the judge and his attaches. And without exception all courts have held that an accused is at the very least entitled to have his friends, relatives and counsel present, no matter with what offense he may be charged.

*In re Oliver*, 333 U.S. 257, 271–72 (1948).

Having an overflow courtroom, or broadcasting the trial via Zoom, is not an adequate substitute for having family and friends attend the trial. First, there is no way for the defendants to feel the warmth and support of their family and friends if they are not in the courtroom. As the court in *Agosto-Vega* stated, "this support is ineffective in absentia." 617 F.3d at 548. Second, an overflow courtroom or Zoom does not capture the entirety of what happens during a trial; it is an anemic substitute for the physical presence of loved ones. Third, it does not recognize that friends

and family may be hesitant to attend the trial because of the risks associated with COVID-19.

## IV.   STARTING A JOINT TRIAL ON JANUARY 13, 2021 COULD UNNECESSARILY DELAY OR DERAIL THE CONDUCT OF TRIAL ITSELF.

Should a participant become infected with COVID-19 during this trial, a mistrial is possible, if not wholly inevitable. Beyond that, the anticipated COVID-19 restrictions to the conduct of trial may occasion delay. As the Court noted at the October 13, 2020 pretrial conference, the need to disinfect surface areas between witnesses will result in delay. It is not difficult to imagine that further delay will result from the measures necessary to protect the witnesses, as well as the jurors and counsel, when documents are introduced into evidence and published.

On October 13, 2020, Judge Saris continued a non-custodial trial from October 19, 2020 to April 6, 2021. *See United States v. Kristopoulos*, Docket No. 18-CR-10324-PBS, Document No. 150. Judge Saris had already presided over a trial during the pandemic, and offered some observations in *Kristopoulos* that may well provide some guidance. In particular, Judge Saris noted that although the previous trial was one week long, jury impanelment took one-and-a-half days. Transcript at p. 1. Judge Saris also noted that because of spacing requirements in the box, only three jurors had access to the individual document screens. The remaining jurors used the large, shared document screen. Judge Saris suggested that screen-access could be an impediment in a document-heavy case. Transcript at p. 9. Undersigned counsel expects this case to be a document-heavy one. Judge Saris' conclusion is that she will not force a defendant to trial, over the defendant's objection, unless the government presents a compelling reasons – such as a dying witness.

Undersigned counsel has lingering concerns, moreover, about communicating with his client during trial while maintaining a safe distance yet preserving the confidentiality of their

communications. Likewise, counsel has lingering concerns about communicating with the Court at sidebar while maintaining a safe distance and keeping the jurors from overhearing the discussions.

**V.  THE INTEREST IN A PROMPT RESOLUTION OF THIS CASE DOES NOT OUTWEIGH THE SERIOUS RISKS TO THE HEALTH OF THE PARTICIPANTS OR THE ISSUES RAISED BY THE ANTICIPATED COVID-19-RELATED RESTRICTIONS ON THE CONDUCT OF TRIAL.**

Neither Andrade nor Correia is in custody. Were they, the calculus would assuredly be different.[20] Detained or not, however, Andrade and Correia have a right to a speedy trial, which they can waive. The government, of course, has an interest in a prompt resolution to this case. The Court has remarked that the public also has an interest in a prompt resolution to this case. Of note, however, the Court has indicated that it plans to try the extortion-related charges against Andrade and Correia together before it tries the SnoOwl-related charges against Correia alone. The government brought the extortion-related charges in September 2019 – that is, just 13 months ago. *See* Document Nos. 53, 69. Relatively speaking, the extortion-related charges are not "old," and the interest in prompt resolution would be satisfied even if joint trial were continued from the winter of 2021.[21] At any rate, that interest clearly should not be afforded greater weight in the balance than the health of the participants and the issues raised by the COVID-19 restrictions on the conduct of trial, including the defendants's right to a public trial before an impartial jury of their peers.

---

[20]   COVID-19 is infecting prisoners at an alarmingly high rate. *See* Monik C. Jimenez, et. al, "Epidemiology of COVID-19 Among Incarcerated Individuals and Staff in Massachusetts Jails and Prisons," *JAMA* (August 21, 2020), available at: https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2769617 (as of July 8, 2020, rate of infection among incarcerated population 2.91 times higher than Massachusetts general population)(last visited October 22, 2020).

[21]   In *Kristopolous*, continued to the spring of 2021, the government brought the charges in September 2018, one month before it brought the SnoOwl charges, Document No. 1. *See United States v. Kristopoulos*, No. 18-CR-10324, Document No. 1.

**VI.     THE PROPOSAL TO TRY THE CASE WITH EVERYONE EXCEPT THE TESTIFYING WITNESS MASKED WITH THE LAWYERS DELIVERING OPENINGS, CLOSINGS, AND EXAMINING WITNESSES WHILE SEATED IN THE SPECTATOR SECTION VIOLATES THE DEFENDANTS' RIGHT TO DUE PROCESS OF LAW AND TRIAL BY JURY.**

As counsel understands the Court's proposed manner of trying the case, everyone, at all times, would be masked, except for the testifying witness. Jurors would be spaced throughout the well of the courtroom. Attorneys would be seated at tables in the spectator section and would speak while seated and masked. That does not constitute a trial, at least not as the right to trial by jury has evolved in England and in the United States. It is fundamentally inconsistent with the notion of an adversary proceeding and the right to confront the witnesses against them. To conduct such a trial will violate the defendants' rights under the Due Process Clause, the right to confrontation and the right to trial by jury.

**VII.    UNDER EXISTING CONDITIONS, THE DEFENDANTS CANNOT ADEQUATELY PREPARE FOR TRIAL BECAUSE OF DIFFICULTIES INTERVIEWING WITNESSES, INVESTIGATING THE GOVERNMENT'S CASE, AND GATHERING DOCUMENTS.**

Given the pandemic, the defendants cannot adequately prepare for trial because they are unable to properly investigate the case. Many government buildings are closed, impairing the ability of investigators to gather records. Witnesses are reluctant to talk to investigators because of their fear of strangers. Under these circumstances, the defendants cannot prepare for trial until the pandemic has been brought under control.

## CONCLUSION

For the foregoing reasons, undersigned counsel maintains the objection to the joint trial date of January 13, 2021, and requests a continuance until a date when the virus is under control such that the trial can be conducted under normal circumstances.

Respectfully submitted,

**GENOVEVA ANDRADE**

By her counsel,

/s/ Charles W. Rankin
Charles W. Rankin
BBO No. 411780
crankin@rankin-sultan.com
Kerry A. Ferguson
BBO No. 672649
khaberlin@rankin-sultan.com
Rankin & Sultan
151 Merrimac Street, Suite 201
Boston, MA 02114
(617)720-0011

**JASIEL CORREIA**

By his counsel

/s/ Kevin Reddington
Kevin J. Reddington
1342 Belmont Street
Brockton, MA 02301

October 23, 2020

## CERTIFICATE OF SERVICE

      I hereby certify that this document(s) filed through the Electronic Filing System (CM/ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 23, 2020.

                                          /s/Charles W. Rankin  
                                          Charles W. Rankin

**NEW CONFIRMED COVID-19 CASES IN MASSACHUSETTS PER DAY
SEPTEMBER 1, 2020 THROUGH OCTOBER 22, 2020**

https://www.mass.gov/doc/covid-19-dashboard-september-1-2020/download (354 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-2-2020/download (288 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-3-2020/download (393 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-4-2020/download (219 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-5-2020/download (416 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-6-2020/download (370 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-7-2020/download (222 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-8-2020/download (168 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-9-2020/download (182 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-10-2020/download (363 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-11-2020/download (443 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-12-2020/download (435 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-13-2020/download (267 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-14-2020/download (235 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-15-2020/download (286 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-16-2020/download (295 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-17-2020/download (419 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-18-2020/download (431 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-19-2020/download (569 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-20-2020/download (340 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-21-2020/download (244 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-22-2020/download (143 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-23-2020/download (542 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-24-2020/download (455 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-25-2020/download (454 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-26-2020/download (515 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-27-2020/download (594 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-28-2020/download (367 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-29-2020/download (450 cases)
https://www.mass.gov/doc/covid-19-dashboard-september-30-2020/download (510 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-1-2020/download (708 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-2-2020/download (753 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-3-2020/download (600 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-4-2020/download (626 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-5-2020/download (465 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-6-2020/download (454 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-7-2020/download (509 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-8-2020/download (409 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-9-2020/download (734 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-10-2020/download (587 cases)

https://www.mass.gov/doc/covid-19-dashboard-october-11-2020/download (570 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-12-2020/download (765 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-13-2020/download (632 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-14-2020/download (518 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-15-2020/download (568 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-16-2020/download (702 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-17-2020/download (550 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-18-2020/download (744 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-19-2020/download (827 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-20-2020/download (821 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-21-2020/download (646 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-22-2020/download (986 cases)
https://www.mass.gov/doc/covid-19-dashboard-october-23-2020/download (968 cases)

## MASSACHUSETTS CITIES AND TOWNS DESIGNATED HIGH RISK AS OF OCTOBER 22, 2020

https://www.mass.gov/doc/weekly-covid-19-public-health-report-october-22-2020/download (Abington, Acushnet, Ashland, Attleboro, Avon, Berkley, Boston, Boxford, Brockton, Buckland, Canton, Chelmsford, Chelsea, Chicopee, Clinton, East Longmeadow, Everett, Fairhaven, Fall River, Framingham, Gloucester, Hanover, Hanson, Haverhill, Hingham, Holliston, Holyoke, Hudson, Kingston, Lawrence, Leicester, Lowell, Lynn, Lynnfield, Malden, Marlborough, Marshfield, Mattapoisett, Methuen, Middleborough, Middleton, Milford, Millville, Milton, Monson, New Bedford, North Andover, Norwood, Oxford, Pembroke, Plymouth, Randolph, Raynham, Revere, Rochester, Rockland, Saugus, Scituate, Seekonk, Shrewsbury, Somerset, Somerville, Springfield, Swampscott, Tyngsborough, Wakefield, Waltham, Webster, West Bridgewater, West Newbury, Westfield, Westport, Weymouth, Winthrop, Woburn, Worcester, Wrentham).