UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                              )
UNITED STATES OF AMERICA,     )
                              )          Criminal Action
          Plaintiff,          )          No. 18-10364-DPW
                              )
v.                            )
                              )
JASIEL F. CORREIA, II,        )
GENOVEVA ANDRADE,             )
                              )
          Defendants.         )
                              )
```


BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


VIDEOCONFERENCE


October 13, 2020
1:47 p.m.



John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts  02210




Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

1    APPEARANCES:

2    On Behalf of the Government:
     Zachary R. Hafer
3    David G. Tobin
     United States Attorney's Office MA
4    1 Courthouse Way
     Suite 9200
5    Boston, MA 02210
     617-748-3106
6    zachary.hafer@usdoj.gov
     david.tobin@usdoj.gov
7
     On Behalf of the Defendant Jasiel Correia, II:
8    Kevin J. Reddington
     Law Offices of Kevin J. Reddington
9    1342 Belmont Street
     Suite 203
10   Brockton, MA 02301
     508-583-4280
11   kevinreddington@msn.com

12
     On Behalf of the Defendant Genoveva Andrade:
13   Charles W. Rankin
     Rankin & Sultan
14   151 Merrimac Street
     Second Floor
15   Boston, MA 02114-4717
     617-720-0011
16   crankin@rankin-sultan.com

17

18

19

20

21

22

23

24

25

<pre>
 1                    P R O C E E D I N G S
 2           COURTROOM CLERK:  Criminal Action 18-10364, *United*
 3   *States v. Correia*.
 4           THE COURT:  Well, I wanted to set this down for
 5   discussion because we've had enough experience now, not a lot
 6   but enough experience now about what it takes to try a case
 7   under present circumstances to feel pretty comfortable that we
 8   can try this case relatively promptly.  And there's I think a
 9   public interest in getting a prompter resolution of the case.
10           I believe I asked Ms. Beatty to flag January 13, which
11   is the date that we discussed before as a trial-ready date.  I
12   say "trial-ready" in the sense that there may be other cases
13   that are running ahead of us, but I don't think so.  And this
14   case is relatively high on the list now of cases that are ready
15   to go.
16           But I also indicated to her, and I wanted to be sure
17   you understood, that my view is we'll go forward on simply the
18   alleged political corruption scheme first; that at this point I
19   will not sever the defendants.  I will on the present record
20   not be holding any further hearing with respect to the *Kastigar*
21   matters; that on the present state of the record I do not see
22   that *Kastigar* problems are created here if the government is
23   careful.
24           Now, the law of *Kastigar* requires almost continual
25   review, and of course I'll do that here.  And the question of
</pre>

1    whether or not the government is potentially creating a problem

2    for itself with this without severance is something I leave to

3    the government in the first instance.  But leaving it to the

4    government, the consequences may end up being to the government

5    if I find ultimately that it was improvident not to sever.  But

6    on the state of the record that I now see, the government can

7    proceed, and we'll go from there.  So the parties should be

8    prepared to do that.

9           There is a larger issue that arises with respect to

10   any case that we try under these conditions, and let me outline

11   them in a summary form.  Although I suspect that you're

12   familiar with them to a large degree.  That is that we have to

13   limit the courtroom to 26 people.  No more than 26 people in

14   the courtroom.  I anticipate a jury of 14.  Now we're down to

15   12 people.  That includes me, it includes the court reporter,

16   it includes the courtroom deputy.  So now I guess we're down to

17   ten people.  Ordinarily I have one or more of my clerks attend,

18   but trying to get everybody who is necessary into the courtroom

19   is a challenge, and so I'd like the parties to be thinking

20   carefully about who they think has to be in the courtroom on a

21   regular basis.  But certainly the counsel for the defendants

22   and the defendants have to be in.  That's another four people.

23   Now we're down to, if I calculate correctly, six additional

24   people.  Maybe the case agents, the law provides for designated

25   representatives.

1             On the other hand, designated representatives are not

2       there simply to be present in the courtroom.  They have to be

3       doing something.  And my expectation is with court security

4       officers who have to administer the 26-person limitation, much

5       of what the case agents are doing is being done by them, but I

6       leave it to the government to tell me.  But start thinking

7       carefully about who you want to add.

8             That goes similarly for the defendants in the case,

9       both counsel and any associated parties involved in

10      representation.  Ordinarily of course we want to have room for

11      spectators, but the first order of business, as far as I'm

12      concerned, is to make sure that we have designation for the

13      people who are actually participating in the trial.

14            And Zoom has taught us that it's possible to have Zoom

15      technology used for attendance by -- as today, for example,

16      attendance by persons who for one reason or the other -- and

17      the reason today is that we're trying to limit the number of

18      courtroom, in-court, in-person proceedings -- for one reason or

19      another can't be in the courtroom or in the courthouse, but we

20      will arrange for overflow courtroom attendance and Zoom

21      attendance for the trial itself to deal with spectators.  I'm

22      trying as best I can to triage who can be in the courtroom and

23      who can't.  But that's a first order of business, is to try to

24      get that straightened away.

25            The second order of business is to recognize how

1    difficult it is to try a case when we're dealing with social

2    distancing and associated forms of, how best to put it, public

3    health concerns.

4         We've been consulting with a team of epidemiologists

5    from Tufts for probably three months now to try to get this

6    working.  And among the things that they have suggested as

7    necessary protocols is everybody wears a mask.  Everybody, that

8    includes the judge.  It includes counsel when they're

9    examining.  And except for someone appearing and testifying,

10   it's everybody else, including the defendants.

11        I don't think this is a case involving identification

12   here that would require removal of a mask for purposes of

13   identification, but you'll want to think about that, see if

14   that pops up.  That of course leads to the next thing, which

15   is, when people testify, they will be without a mask so that

16   the jury can at least observe them.  But that means that the

17   area that they are using has to be wiped down after they

18   testify, that we make adjustments for the microphone that they

19   have, and that takes a little bit of time to do it properly,

20   and I don't think we've really, as a court, figured out exactly

21   how that's going to be handled.

22        The thought was originally that it would be done by

23   the witnesses with the witness box.  But experience in life

24   itself suggests that some people are better at cleaning up

25   after themselves than others.  So to provide quality control,

1    we're focusing on something else, some other way of dealing

2    with it.

3         But the short of it is it takes a while.  So impatient

4    judges, present company of course excluded, who turn to the

5    government and say "next" or the defendant and say "next" and

6    expect next to be there instantaneously, there's possibly a

7    five-minute, maybe even a ten-minute break while cleanup is

8    undertaken.  That counsels in favor of being concise in

9    examination.

10        It also counsels in favor of having stipulations when

11   they're available for the parties.  Otherwise the case can be

12   quite extended.  We have had some experience with jurors now.

13   The jurors are very civic-minded.  That is nobody seems to be,

14   you know, saying that this is an opportunity to avoid jury

15   service.  In fact, they seem to welcome the idea that they can

16   participate in some meaningful way in civic activity at a time

17   when as a community we're under stress.

18        And the jurors have been very -- complimentary is the

19   wrong word but appreciative is probably the better word, of the

20   steps that we've taken with respect to assuring their safety

21   here, and we outline that for them in various ways, and they've

22   made suggestions as well.  But primary to my view is that,

23   while all of us are required to be there by the law, in the

24   case of jurors, they're summonsed.  They're required, of

25   course.  But this isn't something that they chose by being

1    voluntarily or involuntarily drawn into the criminal justice
2    system.

3            So I'm trying to do, all the judges are trying to do
4    whatever we can to make sure that the jurors have the kind of
5    experience that they're entitled to, which is one that both is
6    safe and appears to them to be safe.

7            And we have in that connection provided at various
8    points Plexiglass dividers between the parties and between the
9    parties and their counsel and provided for mechanisms which are
10   a little bit slower-going but mechanisms for versions of
11   private communications between counsel and the parties or the
12   defendants.

13           And it's quite important I think that everybody
14   understands that under these circumstances, if one person is
15   put out of action, it puts the court out of action for a period
16   of time.  Assume, for example, the circumstance in which
17   somebody gets sick.  We have a protocol for that.  But it takes
18   a while to get testing after -- reliable testing after onset of
19   symptoms.  So that can slow the case down or even cause a
20   mistrial in a case if it occurs.  And we are requiring
21   everybody who participates to do a self-report on the existence
22   of symptoms every day, jurors included.

23           So it's a delicate process that requires I think or
24   should lead to cooperation by everybody involved so we can move
25   the case along.  I'd ask you to look carefully and consult with

1    each other about who the witnesses are going to be because

2    under current circumstances, which I have no reason to believe

3    will be changed materially by January, there are limitations on

4    who can come into the Commonwealth without self-quarantining

5    and from what places.

6         So if there are witnesses like that, we should know

7    about them.  You should know about them.  And they should be in

8    a position to either self-quarantine or provide reliable

9    testing regarding being negative for COVID.  As I understand

10   the governor's current directives, it's 14 days of

11   self-quarantine or a negative test.

12        Experience has now suggested to all of us that a

13   negative test immediately after COVID symptoms is not a

14   reliable test, that it doesn't really become reliable for

15   perhaps four or five, six, seven days after the onset.  So that

16   may suggest that test and a form of quarantine for your

17   witnesses for that time period, if the witnesses are necessary,

18   from out of state.

19        And of course there are states that Massachusetts will

20   let people come in from.  I have drafted and I will send out

21   shortly a redacted version of the indictment that would reflect

22   the shape that it's in now.  I view that as an interactive

23   document.  It would be the document that would go to the jury.

24   I think I talked about it earlier before we got into this

25   process of trying to figure out exactly how we would conduct

1  criminal jury trials.

2       This would probably be the first criminal jury trial

3  with two defendants.  We've been moving along the path of

4  one-defendant trials, which we know we can handle.  So this

5  will be a bit more demanding in that form, leading as a result

6  to more pretrials, I suppose, to make sure we're all on the

7  same page and everybody understands what will happen.  And I

8  give forewarning that witnesses who need to be quarantined and

9  aren't at the time in which they're called will be considered

10  to be unavailable and cannot be used during the trial.

11       So that's the broad outline.  I think the thing that I

12  need to know from you is, assuming, as I do, that the way in

13  which our list is running, whether or not trial readiness on

14  the 13th is something that you can do.  And you should

15  understand that I suspect that jury selection will take at

16  least two days.  Jury selection will be conducted in the jury

17  Assembly Hall.

18       We've been planning for, and in the first trial Judge

19  Saris conducted, she was successful in going through

20  essentially three tranches of 25 jurors apiece, done at 9:00

21  and then noon and maybe 3:00.  That seems to work.  And then

22  there was need for followup the following day.  So it takes a

23  while to pick jurors, too, under this circumstance to do it in

24  a way that's transparent on the one hand and on the other hand

25  is consistent with public health protocols that we've

 1    thoroughly vetted among ourselves and with the assistance, as I

 2    said, of an epidemiological team.

 3          So I've spoken for a bit.  Let me just talk about

 4    schedule now.  From the government's point of view, is a trial

 5    that is now I guess three months out agreeable?

 6          MR. HAFER:  Yes, Your Honor.

 7          THE COURT:  Okay.  Mr. Rankin, how about you?

 8          MR. RANKIN:  No.

 9          THE COURT:  How so?

10          MR. RANKIN:  I don't think we've had enough experience

11    with a jury trial, first of all.  I think we've had one jury

12    trial in Boston.  I don't want to be a guinea pig.  I've spent

13    seven months now isolated, and it's not safe.

14          I understand the court's had a team of epidemiologists

15    advising the best ways to do it, but it just seems, when it's

16    not necessary and there's not a defendant in custody who needs

17    a trial, I see no reason to press forward with essentially

18    risks to everyone.

19          I mean, you're not saying that the jurors have to have

20    a COVID test or any of the participants have to have a COVID

21    test.  You're putting people -- I mean, you drew a list of 26

22    as the maximum.  I don't see that as realistic.  I think you're

23    going to have people coming and going.  What about the IT

24    staff?  Who is going to run the projectors for the electronics?

25    What about the cleaning crew?

1          THE COURT:  Well, all of -- I don't mean to interrupt,

2    but I think to shape the discussion, I think it is the case

3    that we will have even more experience by the 13th.  No one is

4    a guinea pig here.

5          MR. RANKIN:  Well --

6          THE COURT:  Just a moment.  Everyone has an obligation

7    to consider carefully, as the court does, when we schedule

8    things, and the existence of public health challenges are

9    challenges to be addressed in specific rather than in gross.

10         So without dismissing what you've had to say, what

11   you've indicated is a need for further development of

12   particularized concerns that I'm prepared to do in the upcoming

13   three months, addressing as best we can anxious concerns and

14   apprehensions and trying to attach to them significant

15   evaluation.  Because the world doesn't come to an end because

16   there is an ongoing pandemic.  We will provide a safe place for

17   everyone.

18         As to the number of people you mention, of course

19   anybody who is in the courtroom has to be counted for the 26.

20   I've conducted at least one, maybe two in-court proceedings in

21   which I enforced the 26-person rule intensively.  And the

22   26-person rule of course is the result of evaluation of

23   capacities for our HVAC system to clear the space, which is a

24   large space, with height.

25         So I hear your concerns and they are things that I

1  will obviously take into consideration and do require specific

2  evaluation in realtime of what you pose.  What I'm going to

3  suggest is that you provide me with a memorandum or a statement

4  of unanswered questions, if that's the way you want to put it.

5  I'll just put those things that you are concerned about that

6  you have not received what you consider to be adequate

7  assurances, and then we'll go through them.

8         But putting that to one side, and I realize that

9  putting that to one side is putting to one side a major issue

10  that you raise.  Are there other issues, like witnesses who are

11  unavailable for reasons other than concerns about public health

12  or people who are going to be gone from the Commonwealth who

13  are going to be necessary and are preplanned, that sort of

14  thing?  That's really what I'm focusing on now from your

15  perspective.

16         MR. RANKIN:  I don't have witnesses that are

17  unavailable as far as I know.  I mean, I can inquire and inform

18  the court if and when I learn of such a thing.

19         I guess the other -- I mean, tell me if you don't want

20  to hear any more on this.

21         THE COURT:  Well, it's not that I tell that I wouldn't

22  want to hear any more, because I have a feeling I will.  But

23  the point is that what I want to hear is informed and is

24  something that we can address in a fashion that creates

25  something more than simply anxious apprehension but says is

1    there something that can be done.

2           Now, if I come to the conclusion that there isn't,

3    that someone is suffering from some sort of -- someone who is a

4    necessary trial participant is suffering from a greater degree

5    of danger for exposure under the circumstances we're talking

6    about, of course I'll make whatever adjustments are necessary

7    for doing that.  But I think it's not so much that I don't want

8    to hear things.  Of course I do.  That's how we're going to

9    figure out how we try this case on what schedule.

10          But I think the better thing is simply to put it in a

11   writing.  I'm not holding you to waiving everything else, but

12   get it into a writing that identifies unanswered questions that

13   need to be answered here that have not been satisfactorily

14   identified yet or dealt with yet from your perspective to

15   permit a case to go forward, this case in particular to go

16   forward on it.

17          But I think, unless there is a specific problem with

18   the 13th of January, that we're going to be in a position on

19   the 13th of January to deal with this case pretty expeditiously

20   and we should do so, that there's a public interest in doing

21   so, and that I will, as I said, do whatever I can to make it

22   work and do whatever I can to stop it if it can't.  And

23   "whatever I can" means I can stop it if I think it's not

24   appropriate.

25          But I'm satisfied that we can all do this together,

1    and I suspect that if we're doing probabilities on those who

2    are most vulnerable without having specific immunological

3    problems, I don't know if Mr. Reddington is on the phone, but

4    we had a back and forth about who is older.  I think I can say

5    I'm older, but in any event, I'll be there under present

6    circumstances I think, unless somebody demonstrates to me that

7    it doesn't work, in which case I won't be there and nobody else

8    will be there for this trial, but I don't see that.

9         So that's about where I am.  That's not to cut you off

10   but to say that your avenue of further discussion would be most

11   helpful if it were in writing, identifying specific things that

12   you're concerned about.

13        Now, is Mr. Reddington on the phone or not?  I just

14   can't see the screen itself.

15        COURTROOM CLERK:  He is on the phone, but he's on

16   mute.

17        THE COURT:  Okay.  Maybe, Mr. Reddington, if you could

18   try to get off the mute button there.

19        Mr. Reddington?  Ms. Beatty, I don't see

20   Mr. Reddington on the list of participants here.

21        COURTROOM CLERK:  He shows up on the second page of

22   participants, but for some reason he's still on mute.  I'm not

23   sure if he hears us.

24        MR. RANKIN:  I'm sorry, I just got a text message from

25   Mr. Reddington.  When I told him "You're muted," he said, "I

1   can hear everyone but I am not on mute."

2          COURTROOM CLERK:  I can't unmute him.  He did

3   something to his device that makes him on mute.

4          MR. HAFER:  It's not muted from the thing you did, is

5   it, Kelly?

6          COURT REPORTER:  No.

7          THE COURT:  I don't see a response.  Well, if he is --

8          COURTROOM CLERK:  Judge, what we can do is, Charlie,

9   can you text him back and tell him to hang up and call back in,

10  and we won't mute him if he's having difficulty unmuting the

11  device.

12         MR. RANKIN:  Okay.  I just texted him that.  I think

13  he can hear us.  Yeah, he's going call in.

14         THE COURT:  Okay.  I can.

15         MR. RANKIN:  Kind of like the game of phone tag.

16         THE COURT:  Well, it is.

17         COURTROOM CLERK:  Mr. Reddington is back with us.

18  He's on the phone number ending 4819.

19         THE COURT:  It ends with --

20         MR. REDDINGTON:  4819.

21         THE COURT:  Okay.  Got it.  So yes, we can hear you

22  now.

23         MR. REDDINGTON:  Excellent, okay.

24         THE COURT:  I just wanted to follow up.  Did you hear

25  the discussion that I had with Mr. Rankin about his concerns

1   about the scheduling?

2          MR. REDDINGTON:  Yes, Your Honor.  I've heard from the

3   very beginning since you were let into the room.

4          THE COURT:  Okay.  Not to again foreclose oral

5   discussion about issues, A, do you have an objection to using

6   the 13th as a date; and if so, is there anything that cannot be

7   put in writing as a way of clarifying and providing for

8   something more than off-the-cuff response and evaluation?

9          MR. REDDINGTON:  Yes, of course, Your Honor.  Not to

10  be difficult, but I do object, and I do join with what

11  Mr. Rankin's comments were.  I feel that this is -- it's going

12  to be a complicated trial.  I know Your Honor runs a very tight

13  ship, but nevertheless it's still going to be complicated

14  trial.  And imagine trying this case under these circumstances.

15  You know, even if we were to wait until April or May, things

16  may very well clear up a little bit.

17          My other concern is I'm afraid, it's like the old

18  days, when you get what we call a death-qualified jury, we may

19  end up with a COVID-qualified jury, and that would exclude a

20  significant cross-section of the community.  I'm worried about

21  the ability to get a fair and objective jury under these

22  circumstances as well.  But I know you've heard Mr. Rankin and

23  you want it in writing, and I can certainly do that.

24          THE COURT:  Right.  I think the concerns, I understand

25  your concerns about the fair cross-section, and we're watching

1    that very carefully.  Of course a fair cross-section should not

2    include people who are COVID-positive to sit on the jury.

3    There are limitations on fair cross-section.

4         But we've been watching the jury returns and the

5    requests for excuse and lack of request for excuse, and there

6    is a -- (technical difficulty) -- provision obviously every day

7    from everybody to report what their situation is.  So we'll be

8    dealing with addressing that as it arises.

9         The only thing I would add is that we sent out over

10   more than 3,000 jury summonses to be sure that we had a long

11   enough list, and we've been I think pretty pleased with the

12   willingness of all sorts of people to appear, not just people

13   who you might think of as specially qualified, but frankly it

14   was particularly satisfying to know that citizens didn't use

15   this as a basis for avoiding their jury service.

16        If that keeps up, then I don't really see an issue

17   with fair cross-section, but you'll have an opportunity

18   obviously to raise the question of that at the appropriate

19   time, and you'll have a substantial track record.

20        The question of when and sequencing is always an issue

21   in any endeavor that involves a queue, but putting this case in

22   a queue seems to me to have justified its placement using the

23   13th, which of course was the time before we really got into

24   the problems with the pandemic that we discussed before.  And I

25   assume that the resistance that both you and Mr. Rankin are

1    expressing is resistance that will be expressed to other judges

2    who inform you of trial readiness, but we've kind of set that

3    date so you have that date as one that is presumptive here

4    against which court orders can be issued to hold you to it --

5    not hold you but to protect you from other judges who might be

6    similarly inclined to invite you in on January 13th.

7          Now, are there other things that we need to talk about

8    here?  As I said, we'll have with some regularity pretrial

9    conferences to bring us up to speed, but the first order of

10   business I think is to get from Mr. Reddington and Mr. Rankin,

11   you can do it jointly if you want, a list of things that you

12   would like to have addressed.

13         And as I said, this is not say it now or have waived

14   it.  It is let's get to these issues and start dealing with

15   them.  And as they become clearer or other things become

16   clearer, we'll take them up as well.  But we've got the time to

17   do it.  I'm committed to doing intensive pretrial in this and

18   other cases that I have on before you and after, and I'm going

19   to do it until I'm satisfied we can either offer a safe trial

20   and a fair one on a particular date or that we can't.  And if

21   we can't, then we move it off and try to reschedule it for a

22   later date.

23         So is a week enough time to put together a collection

24   of issues to be addressed, Mr. Rankin, Mr. Reddington?

25         MR. RANKIN:  What about the end of next week?

1          THE COURT:  Sure.  Is that the 19th?

2          MR. RANKIN:  Well --

3          COURTROOM CLERK:  23rd.

4          MR. RANKIN:  I'm thinking about the -- yeah, that

5     sounds right.  No.  Later than that.

6          THE COURT:  I guess that's -- I lose track.

7          COURTROOM CLERK:  October 23rd is a week from Friday.

8          THE COURT:  Okay.  So we'll make it October 23rd here,

9     and perhaps the government can give a list of their witnesses

10    and any problems with potential witnesses at that point so that

11    we can identify, you know, the issues about making sure that

12    they can actually testify when they come here because we'll be

13    a little bit more stringent I think than maybe the governor's

14    directives because of the nature of the proceedings and any

15    potential areas that you see anyway for stipulations as well,

16    so we'll start with the government on that maybe by the 26th.

17    Does that work, Mr. Hafer or Mr. Tobin?

18         MR. HAFER:  Yes, Your Honor, that's fine.  I took a

19    preliminary look at a very -- well, preliminary version of an

20    order of proof, and I do think that we're going to be fortunate

21    in that almost all of the witnesses, assuming no one's

22    relocated in the last three months, are actually Massachusetts

23    residents.  So hopefully that will at least eliminate one of --

24         THE COURT:  All right.

25         MR. HAFER:  But yes, I'm happy to provide that list.

1          THE COURT:  All right.  And as always, if there's some

2     issue about a need for in-camera presentation, I don't think

3     there's a need to do it ex parte, but there may be a need for

4     in-camera presentation.  Ex parte I think can be dealt with

5     with protective orders or something like that so that we can

6     get this going so somebody doesn't say "Oops" at the last

7     minute.  They have to say "oops" earlier so then we can fix

8     oops.

9          MR. RANKIN:  Judge, can I ask a question?

10          THE COURT:  Sure.

11          MR. RANKIN:  You mentioned that 3,000 summonses have

12     been sent out.  Can you share with us what the response rate

13     was and how that compares to --

14          THE COURT:  I'm sorry to interrupt you.  I can

15     probably do that, but I can't do it off the tip of my tongue,

16     and I will look to see where that stands, because obviously we

17     didn't bring in all 3,000 people.  So that initial pool is

18     still being used, as I understand it.

19          As a matter of fact, there's a case being impaneled

20     today that is using I think the same panel, but I'll have that

21     information, and you're entitled to jury information obviously

22     here.  And while thankfully people don't ask for jury

23     information in advance all the time, this is probably one in

24     which it makes sense to provide it for purposes of providing

25     informed responses on the part of counsel who are concerned

1    about this issue generally.

2           So I'll do what I can to deal with it.  Maybe at our

3    next pretrial I can discuss what we have then and give you some

4    sense of what's going on.  Okay?

5           Anything else that calls for attention now?

6           MR. HAFER:  Your Honor, just quickly, I assume you'll

7    issue sort of a revised amended pretrial order with all the

8    deadlines, including the October 26 one for us for a witness

9    list and stuff like that.  I mean, I'm taking notes obviously.

10          THE COURT:  I will adjust that I think.  I think

11   because we still have the question that won't be answered until

12   the last day of does the trial start that day or is there some

13   structural problem, public health problem that's so insistent

14   that it can't, that things like Jencks Act materials probably

15   will be ordered disclosed early.

16          MR. HAFER:  We've actually done it already.  90

17   percent of it is already out.

18          THE COURT:  Then that shouldn't be a problem.  There

19   are some cases in which there could be a problem --

20          MR. HAFER:  That's --

21          THE COURT:  -- file seems to be the right way to deal

22   with this one, and I gather that's essentially what you're

23   doing.

24          MR. HAFER:  Yes, Your Honor, that's correct.  Only

25   reason I ask, too, is it will be helpful for us with all the

1   caveats about circumstances and everything possibly changing,

2   if we have the date and we have witnesses that perhaps are

3   planning travel, I can tell them now essentially not to do

4   that.

5           THE COURT:  Yeah.  I think that's one way of doing it,

6   and also a subpoena, which is not an RSVP.

7           MR. HAFER:  Correct.

8           THE COURT:  And so sending that out as a way of

9   clarifying the mind about when people think they want to leave.

10  So consider the trial date to be set as January 13th, unless

11  it's changed, and sufficiently so that you can all rely on

12  issuing subpoenas for that date to maintain witnesses that you

13  want to be sure show up, and I probably will inquire why didn't

14  you do a subpoena if someone doesn't show up.

15          MR. HAFER:  Understood.

16          THE COURT:  Okay.  If there's nothing further, then

17  Ms. Beatty and I will work on the revised pretrial order that

18  reflects all of this stuff, and we can talk about that as well.

19  We will probably schedule a further pretrial the week of the

20  first.  I think I actually have a trial scheduled that week,

21  but I'll find time to do it -- I mean, if it is a trial.

22  That's I think *Batista* that is scheduled for jury treatment,

23  but perhaps people will reconsider their positions.

24          In any event, we'll keep plugging away at it because,

25  as I said, the court as a matter of policy is of the view that

1    if we can provide those kinds of assurances that are necessary

2    for people to be safe and feel safe that we shouldn't delay

3    further the criminal trial list, although it will be narrowed.

4            I will tell you that we will have, by January 13th,

5    we'll have five courtrooms that are ready for criminal jury

6    trials and enough experience I think to be able to answer most

7    of the questions by that time.

8            So you've got a couple of homework assignments, and I

9    do, too.  And as I said, I will send out shortly a redacted

10   version with the complaint so that you see what I'm thinking

11   might go to the jury under these circumstances, and we can talk

12   about that.  But I'm going to do it, because it's not fully

13   complete, do it and ask Ms. Beatty just to send it by email.

14   It won't be docketed until it's ready to be docketed and we've

15   had a full discussion of the issue.  Because otherwise there

16   will be potential for compromise of the various confidences

17   that may be involved in trial.

18           So anything else that anybody can think of that we can

19   profitably discuss right now?

20           MR. HAFER:  Not from us, Your Honor.

21           THE COURT:  Okay.  All right.  So we'll be in recess,

22   and I'll see you probably next by Zoom in the beginning of

23   November.  We will be in recess.

24           (Adjourned, 2:31 p.m.)

25

1                 CERTIFICATE OF OFFICIAL REPORTER

2

3         I, Kelly Mortellite, Registered Merit Reporter

4  and Certified Realtime Reporter, in and for the United States

5  District Court for the District of Massachusetts, do hereby

6  certify that the foregoing transcript is a true and correct

7  transcript of the stenographically reported proceedings held in

8  the above-entitled matter to the best of my skill and ability.

9               Dated this 21st day of June, 2021.

10

11               /s/ Kelly Mortellite

12               _____

13               Kelly Mortellite, RMR, CRR

14               Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25