UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


```
                             )
UNITED STATES OF AMERICA,     )
                             )              Criminal Action
          Plaintiff,          )              No. 18-10364-DPW
                             )
v.                            )
                             )
JASIEL F. CORREIA, II,        )
GENOVEVA ANDRADE,             )
                             )
          Defendants.         )
                             )
```


BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE


VIDEOCONFERENCE


November 10, 2020
11:36 a.m.


John J. Moakley United States Courthouse
One Courthouse Way
Boston, Massachusetts  02210


Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

```
 1    APPEARANCES:

 2    On Behalf of the Government:
      Zachary R. Hafer
 3    David G. Tobin
      United States Attorney's Office MA
 4    1 Courthouse Way
      Suite 9200
 5    Boston, MA 02210
      617-748-3106
 6    zachary.hafer@usdoj.gov
      david.tobin@usdoj.gov
 7
      On Behalf of the Defendant Jasiel Correia, II:
 8    Kevin J. Reddington
      Law Offices of Kevin J. Reddington
 9    1342 Belmont Street
      Suite 203
10    Brockton, MA 02301
      508-583-4280
11    kevinreddington@msn.com

12    On Behalf of the Defendant Genoveva Andrade:
      Charles W. Rankin
13    Rankin & Sultan
      151 Merrimac Street
14    Second Floor
      Boston, MA 02114-4717
15    617-720-0011
      crankin@rankin-sultan.com

16

17

18

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2              COURTROOM CLERK:  Just as a reminder to everyone,

3    Local Rule 83.3 does not allow any recording, photography or

4    broadcasting of this proceeding.  Counsel, are we all set to

5    go?

6              MR. HAFER:  Yes.

7              COURTROOM CLERK:  Criminal Action Number 18-10364,

8    United States v. Correia and Andrade.

9              THE COURT:  Okay.  I have the various materials you

10   submitted.  I think maybe the best way to proceed is to get a

11   sense of whether or not there's progress on the question of

12   stipulations.  Mr. Hafer.

13             MR. HAFER:  Yes, Your Honor.  I received an email from

14   Mr. Rankin about an hour ago on the stipulations.  I need to

15   digest it a little bit.  I guess, some progress, but Mr. Rankin

16   wants to see sort of finalized exhibits from me on the first

17   three relating to the phone and bank records before he

18   stipulates and has informed me he is not going to stipulate on

19   the presence -- the fact that the statements we allege are

20   false were made in the presence of a federal agent.

21             So I think what has to happen mechanically now is I

22   have to physically put the exhibits together.  All the

23   underlying records have been provided long ago, but the

24   summaries that I intend to introduce aren't finalized yet.  So

25   Mr. Rankin has informed me that he won't be stipulating until
```

 1  he reviews those.

 2         At the end of the day, Your Honor, bringing in a

 3  federal agent -- and then the same on the HUD funding.  He

 4  wants to see that, what that would look like.  So some of these

 5  I'll draft now.  The ones that Mr. Rankin has told me are not

 6  hard nos I will draft for his review.

 7         I will say that, you know, getting a witness to

 8  testify to the HUD funding and the fact that the statements

 9  were made is not a heavy lift.  I mean, it is one more person

10  at a time that we're trying to streamline and be efficient and

11  that sort of thing.

12         The phone and bank records, if we don't have a

13  stipulation on those, that's going to -- I've not been in

14  contact with any -- there's bank records from all over the

15  place.

16         THE COURT:  Let me, maybe I can get a better sense of

17  what's going on here by going through the list of the

18  government's proposed witnesses and seeing which, if any, of

19  them are going to be called no matter what.  So, Brian Bairos?

20         MR. HAFER:  Yes, he will absolutely be called.

21         THE COURT:  Louis Bettencourt?

22         MR. HAFER:  I would say more likely than not he will

23  not be called.

24         THE COURT:  And is that because you think he can be

25  stipulated to or just that you're trimming the case?

 1          MR. HAFER:  Trimming the case, and I tried to be

 2 overinclusive on the witness list, Your Honor.

 3          THE COURT:  David Brayton?

 4          MR. HAFER:  Yes, he will be called.

 5          THE COURT:  Hildegar Camara?

 6          MR. HAFER:  Yes, he will be called.

 7          THE COURT:  Cannabis Control representative?

 8          MR. HAFER:  That's up in the air.  I need to do the

 9 final sort of shoe leather work of witness preparation.  I'm

10 hoping that I don't need a rep from the Cannabis Commission,

11 Your Honor, but I want to maintain the ability to call, so for

12 notice purposes, I included someone, but I'm hoping I don't

13 need the witness.

14          THE COURT:  When you say you hope you don't need the

15 witness, do you need the evidence?

16          MR. HAFER:  Well, I'm just going to be -- I don't

17 think so, is the short answer.  But I haven't done final prep

18 for the witness that I intend to talk primarily about the

19 approval process.  I think --

20          THE COURT:  So let me suggest on that that you prepare

21 a stipulation that covers that material.  You may or may not --

22          MR. HAFER:  Okay, yes.

23          THE COURT:  And if such a stipulation exists, is that

24 going to be disputed by the parties, by the defendants?

25          MR. HAFER:  It would -- Charlie --

1          THE COURT:  Just a moment.  This is directed at Mr.

2    Rankin and Mr. Reddington.

3          What I'm really trying to identify is those areas in

4    which, if there's testimony -- if there's evidence offered,

5    you're going to want it from a live witness rather than someone

6    else.  So let's assume that there's evidence offered regarding

7    the Cannabis Control Commission procedures or process.  Are you

8    going to want a live witness for that?

9          MR. RANKIN:  Maybe.  I don't know yet.

10         THE COURT:  Well, maybe, yeah.  Why is that?

11         MR. RANKIN:  Well, I don't know what Mr. Hafer has in

12    mind with the Cannabis Control Commission.

13         THE COURT:  Okay.  So let me pause here.  This is and

14    Alphonse and Gaston problem that I want to cut through.  So I'm

15    going to tell Mr. Hafer to put together a proposed stipulation.

16    You'll look at it, and then we'll talk some more about it.

17         What I'm trying to identify is anyone in which there's

18    some suggestion that absolutely have to have a live person

19    there that you know right now is the case.  So Mr. Hafer will

20    prepare a proposed stipulation that will clarify these issues a

21    bit for the purposes of seeing whether a stipulation is

22    possible.  Then we have Oteniel -- I guess I pronounce it

23    correctly -- Correia, live?

24         MR. HAFER:  Yes, live witness, yes.

25         THE COURT:  Antonio Costa?

1        MR. HAFER:  Yes, live witness, Your Honor.

2        THE COURT:  Nikki Custadio?

3        MR. HAFER:  Yes, Your Honor, live witness.

4        THE COURT:  FBI cell phone extraction witness.

5        MR. HAFER:  That would be one that I will prepare the

6   actual -- that Mr. Rankin just said he wanted to see what the

7   stipulation would look like, so I will do that in a timely

8   manner but hopefully it will be --

9        THE COURT:  So we've got that one coming.  Christopher

10  Harkins?

11       MR. HAFER:  Live witness, Your Honor.

12       THE COURT:  David Hebert?

13       MR. HAFER:  Live witness, Your Honor.

14       THE COURT:  The phone company keepers of records.

15       MR. HAFER:  I'm really hoping we can do that with a

16  stipulation.  The records, we produced the records in automatic

17  discovery.

18       THE COURT:  Okay.  Just pause for a moment.  What you

19  haven't done yet is provide a draft stipulation with respect to

20  that; is that right?

21       MR. HAFER:  That's correct.  And just to be clear,

22  Mr. Reddington has already agreed to the stipulations.  Mr.

23  Ranking informed me of his position about an hour ago.  Like I

24  said, if Mr. Rankin was a hard no on all of these, then I

25  wasn't going to put the effort into preparing stipulations, but

1    I can do it quickly now.

2             THE COURT:  Well, yeah, I suspect that you'll want to

3    prepare stipulations in any event.  So phone company

4    stipulations, Mr. Rankin wants to see them, so you'll prepare

5    those.

6             The bank and financial records, is that another set of

7    stipulations that Mr. Rankin has asked to see in draft form?

8             MR. HAFER:  Correct, Your Honor.

9             THE COURT:  Okay.  Michael Khoury?

10            MR. HAFER:  Live witness.

11            THE COURT:  Sandra Lemanski?

12            MR. HAFER:  Live witness, Your Honor.

13            THE COURT:  Joseph Macy?

14            MR. HAFER:  Live witness.

15            THE COURT:  Pauline Nguyen.

16            MR. HAFER:  That's one I'm hoping in continuing

17   efforts to streamline the case we won't need, but I've noticed

18   her in an abundance -- she's a former lawyer with the Ethics

19   Commission.  A little bit will depend on how the cross of other

20   witnesses goes.  If we think we need her, that's why I've

21   noticed her, but I'm hoping that that's someone we can continue

22   to streamline and we won't need her.

23            THE COURT:  Dina Pichette?

24            MR. HAFER:  Live witness, Your Honor.

25            THE COURT:  Matthew Pichette?

```
 1              MR. HAFER:  Live witness.

 2              THE COURT:  Charles Saliby?

 3              MR. HAFER:  Live witness.

 4              THE COURT:  Sami Saliby?

 5              MR. HAFER:  Live witness

 6              THE COURT:  Edward Silva?

 7              MR. HAFER:  Live witness.

 8              THE COURT:  Maria Soares?

 9              MR. HAFER:  Yes, live witness.

10              THE COURT:  Jessica Thompson?

11              MR. HAFER:  Live witness.

12              THE COURT:  Okay.  So let's go back to this process.

13  For everyone that you've noticed, I want from the government

14  the amount of time that would be taken in direct examination of

15  those witnesses.  That's something you know or should know.

16              MR. HAFER:  Yes, Your Honor.

17              THE COURT:  Then with respect to -- but I want that

18  for every one of these witnesses --

19              MR. HAFER:  That's no problem.

20              THE COURT:  -- potential witnesses.  Now, with respect

21  to those as to which there's a potential for stipulation, I'd

22  like to have the draft stipulation prepared.  I understand at

23  this point that we're talking about potentially the Cannabis

24  Control Commission representative, the FBI cell phone

25  extraction witness, the keepers of the records of the cell
```

1    phone companies, the keepers of the records of the various

2    banks.  I think that's it for potential stipulations.

3          MR. HAFER:  That's all I have on my list now, too,

4    Your Honor.

5          THE COURT:  So when can you have them done?

6          MR. HAFER:  What is today, Tuesday?  Next Monday, six

7    days.

8          THE COURT:  That's fine.  I just want to keep pushing

9    this along --

10         MR. HAFER:  I agree.

11         THE COURT:  -- better idea of it.  So a draft

12   stipulation --

13         MR. HAFER:  I could try for Friday, Your Honor.  If I

14   can get it done Friday, I will, but if I could just have until

15   Monday.

16         THE COURT:  Yes, Monday is fine for both the draft

17   stipulations and the time taken by the witnesses if they

18   testify, any witnesses who testify that we've talked about here

19   in direct examination.

20         MR. HAFER:  Yes, Your Honor.

21         THE COURT:  Okay.  Then responses from the defendants

22   to that initiative by the following Monday.  Is that the 20th?

23   I can't recall.

24         MR. HAFER:  23rd I think it would be -- if I do --

25   yes, Your Honor, mine would be the -- my deadline would be the

1  16th and then that would be the 23rd for them, I believe; is

2  that right?

3          THE COURT:  No.

4          MR. HAFER:  Today is the 10th.

5          THE COURT:  Another week for them.  And that, it seems

6  to me, comes in -- what is the date?

7          MR. HAFER:  Your Honor, I can actually -- today is the

8  10th, so I would have the 16th for my stipulations and witness

9  times, and then that would give them to the 23rd, a week later.

10          Your Honor, I can do the estimated time on direct by

11  close of business tomorrow.  I just need a little bit of more

12  time on the stipulations.  The government's interest is the

13  same as yours in keeping this on track, so if that helps the

14  court at all, I can have that submitted by tomorrow.

15          THE COURT:  Okay.

16          COURTROOM CLERK:  Judge, I think Mr. Reddington is

17  having difficulty hearing us, and now the video is gone.

18          THE COURT:  Okay.  I think Mr. Reddington is back now.

19          MR. REDDINGTON:  I'm all set.  I just -- I don't know

20  what happened.  It just went mute for about five, ten seconds,

21  but I'm all set.

22          THE COURT:  Okay.  So then we'll have from the

23  defendants a response with respect to the stipulations, whether

24  or not they're likely to be acceptable or not likely to be

25  acceptable, I'm not going to deal with words quite yet, but

 1   whether or not we're going to be saying, "No, we're not going

 2   to be able to stipulate to something like this by the 23rd.

 3          Similarly, with respect to every one of the witnesses

 4   that the government lists and their direct examination, I'd

 5   like to hear what the cross is going to be, how long that cross

 6   is going to last.

 7          MR. RANKIN:  Judge, I'm not able to do the estimate of

 8   the cross by that time.

 9          THE COURT:  Why not?

10          MR. RANKIN:  I'm not far enough along in preparation.

11          THE COURT:  Well, I think you're going to have to do a

12   preliminary of it.  I'm going to require you to do it.  Saying

13   that you can't do it is just dragging feet at this point.

14          So we're going to proceed in an effort to clarify the

15   issues, and you'll do the best you can at this point.  I'm not

16   holding anybody to any of this.  I'm trying to get a better

17   sense for my colleagues about what it is that we're going to be

18   taking up of trial time in this case and what's going to be

19   involved in this case.  So we'll have the estimated times, good

20   faith estimates, not final estimates but good faith estimates,

21   and an indication, good faith indication of whether or not

22   there's a possibility of stipulation by both of the defendants

23   here.  So we'll have that by the 23rd.

24          Now, in terms of timing, it's now my understanding

25   that we're going to be pushing out to February 3 to start here.

1    I tell you that at the outset so that you've got a better

2    understanding of the amount of time for preparation.  But

3    that's where I think we're going to be starting.  And if I can,

4    I say the 3rd mainly because that's when we try to do the

5    witness selection.

6              Barbara, were you talking about the 2nd, though?

7              COURTROOM CLERK:  Yes.  The jury would come in on

8    February 2, which is a Tuesday.

9              THE COURT:  Right.  Okay.  So we'll use the 2nd as the

10   first date of jury selection.

11             Now, turning to the questions about jury selection

12   that were raised, as you know -- and yield and that sort of

13   thing, as you know I'm sympathetic to it.  Nevertheless, there

14   is a general view that in order to clarify anything that you

15   want to know about the jury selection process and that sort of

16   thing, that is past experience with the other jurors that have

17   been selected, that you'll have to make a specific request for

18   it, and I'll rule on that request in my judicial capacity but

19   in light of views that are expressed nationally by the

20   Administrative Office and that sort of thing.  But in any

21   event, to the degree that you want past experience or anything

22   having to do with jurors, you've got to do it by motion.

23             I suggest that while things are still fresh, we're

24   still dealing with the same panel, that you make such a motion

25   promptly.  I would suggest you do it by the 23rd as well.  So

1    I'll leave it to the 23rd for any motions with respect to

2    experience of jurors asking to be excused, excused, the kind of

3    thing that was raised in a general sort of way earlier by the

4    defendants in this case.  And then I'll review it in a judicial

5    capacity at that point quite apart from my own personal views

6    about making available such information.

7            So then I turn to the defendants' objections to what

8    was then the January 2021 trial date.  It's now February 2nd.

9    I guess I have an immediate response to it and then a broader

10   response.  The immediate response is, for all intents and

11   purposes, this is a categorical objection that says things are

12   uncertain so we don't want to say.

13           They are, but we're going to keep moving along until

14   we reach that point in which we can't say.  I have to say that

15   I have no intention of jeopardizing the health of any

16   participant in this case.  Whether or not the February 2nd date

17   would lead to that is at best uncertain and in any event far

18   enough away so that we can start making adjustments to it.

19           I have to say in addition there are no specific

20   indications of health problems on the part of the defense

21   counsel in this case.  There are generic concerns that put them

22   in the category of me here.  Nothing particularly different for

23   the experiences of people over 70.

24           In any event, this is the opportunity to, not now, but

25   in an ex-parte submission, I will entertain any specific kind

1    of physical problems that are different from anyone else who is
2    70 years old or so.  I thought that's what I was going to get,
3    but I didn't.
4         I will say that desire not to wear a mask generally
5    stated or even a test of walking around a house with a mask on
6    is not enough.  Nobody wants to wear a mask, least of all me.
7    But it's necessary.  And unless there's some specific reason
8    not to, it is simply a form of outerwear that is required in
9    the course of the court.  It's wearing a tie.  It's wearing a
10   suit and a jacket.  It's wearing a variety of things that may
11   not be worn on a Zoom.
12        But in any event, in the absence of something like
13   that, I can't say that there's any reason to say no wearing of
14   masks, but you have another chance to do that.
15        One thing that is quite striking here is a lack of
16   real understanding of what is going on in the courtroom, how
17   the courtroom is set up and what adjustments can be made.  And
18   you can't simply say, "Well, we don't know what it is, but we
19   don't like it."  So what I'm going to do is schedule a field
20   trip to the courtroom to see exactly how it's set up so that
21   the parties can make suggestions and observations with respect
22   to that.
23        A possibility is next week, we have a couple of live
24   hearings next week, and those are right now supposed to be
25   pleas or sentencings, although I don't know whether they'll go

```
 1    forward because we adjust as things arise, and there are

 2    problems in the prisons now that are making the prison system,

 3    the marshals unwilling to or resistant to bringing people in,

 4    and under the circumstances, of course I'll consider or

 5    probably defer to that as I would if something specific were

 6    raised by defense counsel here.  So far we haven't gotten to

 7    that.

 8              But you have to understand what the courtroom looks

 9    like.  You have to tell me what you think needs to be done, and

10    I have to respond to that.  And so a way of doing that would be

11    for you to be present if you want to be present during hearings

12    next week but, in any event, to have you come in, both defense

13    and prosecution, come in to talk through the layout of the

14    courtrooms themselves.

15              So I don't know what the availability of counsel is

16    next week or in the near-term future, but I'd like to schedule

17    something like that.

18              MR. RANKIN:  I'm available all next week, except for

19    first thing Wednesday morning.  Otherwise, I'm free the entire

20    week.

21              THE COURT:  Okay.  Mr. Reddington, how about you?

22              MR. RANKIN:  He's on mute.

23              THE COURT:  Okay.  Mr. Reddington.

24              MR. REDDINGTON:  Yes, sorry about that.  Let me just

25    check my calendar.
```

1          THE COURT:  Sure.

2          MR. REDDINGTON:  Thank you.  I'm starting a

3     jury-waived trial in Plymouth Superior Court on Monday the

4     16th, but I would expect -- let me just look.  Then I've got a

5     bunch of cases in Fall River Superior Court.  One is on for an

6     in-person motion to suppress.  Let me check Friday.  Friday I'm

7     going to be in federal court in Portland, Maine.  I'm sorry,

8     Judge.  How about, could I ask for maybe Monday the 23rd in the

9     afternoon, if that works for everybody?

10         THE COURT:  Let me just see here.  Barbara, what do we

11    look like?  I'm just trying to bump back and forth.

12         COURTROOM CLERK:  You have some virtual hearings

13    between 11:00 and 12:00.  That's about it for that day.

14         THE COURT:  Okay.  So then let's shoot for, how about

15    1:30 on the 23rd, kind of a preliminary walkthrough for the

16    parties so we've got an understanding of what's going on.

17         Although, you have presumably a filing due then.  But

18    why don't we do that the 23rd.

19         MR. RANKIN:  1:30?

20         THE COURT:  1:30, yeah.

21         MR. RANKIN:  Okay.

22         THE COURT:  And I expect the government to be present

23    as well.

24         Now, in that connection, I would like to have from the

25    parties a more specific understanding of who they believe is

1    necessary for their trial team and any observers that you want

2    to have.

3            Again, if the defendants have people that they would

4    like to have in the courtroom as part of their trial presence,

5    I'd like to know who those people are, how many people there

6    are.  Because as I said, we're not going over 26.  But I want

7    to see who we're talking about in dealing with that sort of

8    thing.

9            So I would like to have from the parties by the 23rd

10   an identification of those who would be in the courtroom, and

11   we can go through that as well during that hearing to get a

12   sense of what we're dealing with here.  So we'll use that as

13   the next major event in the pretrial.

14           As I say, this is an ongoing pretrial.  Part of the

15   process is to assure that I've identified accurately what this

16   case is going to entail and how much time is going to be spent

17   in a particular courtroom with it and how much time is going to

18   be spent on jury selection.

19           My expectation is that we will have the jury assembly

20   area for the week before the trial starts.  I'll have to

21   double-check that to be sure.  Then when we get to trial, we

22   have available five trial courtrooms, so we're not interfering

23   with anybody else once we choose the jury.  It's the choosing

24   of the jury that's the chokepoint for us conducting our trials.

25           So we'll use those as kind of instrumental dates and

1   times and activities to get closer to an understanding of how

2   this case is going to be tried and when and for how long.  So

3   are there other questions that we need to discuss right now?

4           MR. HAFER:  Your Honor, I just have one.  I just want

5   to make sure I understand what you said about the Jury Assembly

6   Room.  So it would be jury selection on February 2nd and 3rd

7   and then openings would be the following Monday?

8           THE COURT:  What I think would happen is this:  that

9   we would -- and again, this is developing, but because of the

10  length of the number of witnesses and the potential for adverse

11  or I should say extraneous publicity and larger concerns about

12  picking a jury generally that I have in a case that's going to

13  run this long, that my guess is it's going to take us that week

14  to pick the jury.  That would mean we'd be in the Jury Assembly

15  Room during that week.

16          Now, if we go faster, so much the better.  That

17  happened with Judge Saris, and it happened with Judge

18  Burroughs, too, and they did, to my observation, a pretty

19  detailed kind of jury selection.  But I'm going to give us a

20  margin, so if we can start a trial with opening statements, I

21  might well do that that week.  But my guess is I'm going to be

22  carving out that time and telling my colleagues I think I've

23  got to carve out that time meaningfully to have that jury room,

24  that jury assembly area that week.

25          MR. HAFER:  Understood.  And just so Your Honor knows,

1   too, for planning purposes, while there are, you know, more

2   than five or six witnesses on the trial list, there's not a lot

3   of -- there are not going to be a lot of exhibits.  I'm working

4   on an exhibit list.  They're not voluminous.  There's a lot of

5   photographs and stuff like that, and a lot of the testimony

6   from a lot of these witnesses is pretty straightforward and

7   not, you know, really complex typical expert back and forth

8   stuff like that.  These are fact witnesses who testify to the

9   who, what, where, when, why, so we're going to move it on our

10  end as best --

11            THE COURT:  Okay.

12            MR. HAFER:  I understand what --

13            THE COURT:  I encourage you to do so.  One of the ways

14  I'm going to find out about that is you're going to tell me how

15  long it's going to take to do direct examination of those

16  witnesses.

17            MR. HAFER:  Understood.

18            THE COURT:  So now let me turn to something that

19  defendants did say that seemed more particularized, and that is

20  inability to contact witnesses during time of pandemic or

21  difficulties in doing so, which I understand and acknowledge.

22  I think to start to get a handle on that, I'd like ex-parte

23  submissions from the defendants as to those witnesses that they

24  believe might be problematic or for who contact might be

25  problematic.  Then we'll work our way through to see what might

1    be done, what needs to be done, what can't be done there.  But

2    I want to get some specificity to that as best you can at this

3    point.

4            This is, as I said, a practice of trial preparation

5    well in advance of the trial in order to try to be sure that

6    we've thought through all that we can and done all we can to

7    provide a trial in a timely fashion.  And timely fashion is not

8    merely the preserve of the government or of the defense.  It's

9    also a matter of public interest that has to be considered and

10   balanced against the health considerations that loom over us at

11   this point.

12           So I guess I'm not going to ask for that specificity

13   of witnesses by the 23rd, but I probably will after that when

14   you've got a sense of what the government's case in chief is

15   going to be so you can tell me what apprehensions you have

16   about ability to contact witnesses, and we'll talk that

17   through.

18           I will do that, as I've indicated, on an ex-parte

19   basis because it seems to me the defendants do not have to

20   disclose to the government what their lines of attack or

21   anything like that are.  I do need to know it however for

22   purposes of planning this case.  So we'll talk about that on

23   the 23rd as well, you know, schedule to try to advance that

24   aspect of this.

25           I start where -- or I end for today where I began,

1    which is, we're going to work this through and see what can be

2    done.  There are some can't-fix kinds of things.  No more than

3    26 people in the courtroom.  There are some things that might

4    be adjusted.  But the longer the case goes, the more dangerous

5    it is for purposes of being compromised by health

6    considerations.

7           Similarly, the issues of accommodation for specific

8    parties is something I will fully consider here but not in a

9    categorical sort of way.  I've got to do it in a specific sort

10   of way.  So the more we talk together, the more meat there's

11   going to be on the bones here to work this case toward a

12   resolution.  But that is the ultimate goal here.

13          Any questions that any of the parties want to present

14   at this point?

15          MR. RANKIN:  Can I just raise one issue, Your Honor?

16          THE COURT:  Sure.

17          MR. RANKIN:  I think at our last conference Your Honor

18   addressed the *Kastigar* motion we had filed.

19          THE COURT:  I'm sorry, I didn't hear.

20          MR. RANKIN:  The *Kastigar* motion.

21          THE COURT:  Yeah, yeah.

22          MR. RANKIN:  And you indicated that you didn't need to

23   hear anything further about it.  I just want to clarify.  Does

24   that mean that you have denied the motion to dismiss?

25          THE COURT:  As of right now, yes.

1          MR. RANKIN:  Okay.

2          THE COURT:  But with recognition that this can be

3    raised at any point and has to be evaluated at any point.  But

4    as far as I'm concerned, right now, I don't find that the

5    motion is sufficient to justify dismissal or any kind of

6    further discovery.  However, this whole process is going to

7    lead to further discovery.

8          The government's disclosures about its witnesses are

9    going to make clear what's going on, and I'll entertain it at

10   any point that it's raised and consider it at any point, but my

11   expectation is that we're a little bit far away from the next

12   point at which you might be raising this issue.  We might have

13   more information that could justify your position on this.  But

14   right now, I don't think you do.  So that's why I've denied the

15   motion without prejudice to resubmittal.

16         MR. RANKIN:  Thank you for that clarity.

17         THE COURT:  Okay.  Anything else?

18         MR. HAFER:  Not from the government, Your Honor.

19         THE COURT:  Okay.  So we'll see you on the 23rd, but

20   we'll have some submissions before.  I don't want the

21   submissions on the docket, but I want to see them because I

22   consider them to be preliminary in an effort to move the case

23   along a bit.  At some point they will become part of the record

24   in the case, but at this stage I want to encourage candor, good

25   faith, an effort to understand what the other guy is trying to

1    deal with and responsiveness to that.

2         At some point the parties will take their further

3    positions on issues, and of course at that point it becomes or

4    it should become a matter of public record in the form of a

5    docket, but this is the kind of preliminary stuff that takes

6    place, it's not on the docket until it becomes necessary for

7    the court to make a particular determination with respect to

8    it.

9         MR. HAFER:  Judge, just on that point then, for the

10   time estimates for the witnesses, do you want us to just email

11   Ms. Beatty and copy Mr. Reddington and Mr. Rankin?

12        THE COURT:  Yeah, similarly for the responses that the

13   defendants make here.  And as I've said, I've indicated

14   willingness to entertain ex-parte submissions of particularized

15   matters that might be sensitive or parties don't care to have

16   disclosed but are material to moving this along.

17   Particularized health concerns are ones that I identified here

18   that, while other people as a general proposition don't like

19   wearing masks, there may be particular health reasons why a

20   particular individual cannot wear a mask over an extended

21   period of time or it poses some kind of particular problem.  If

22   it does, I want to know about it so I can attempt to deal with

23   it.

24        MR. RANKIN:  One other question, Your Honor.

25        THE COURT:  Sure.

1           MR. RANKIN:  For the 23rd, I understand you want

2    counsel to be there.

3           THE COURT:  Right.

4           MS. RANKIN:  With respect to Ms. Andrade, I assume

5    that she has the option to be there on the 23rd?

6           THE COURT:  Yes.  My view is she has the option.

7    She'll be subject to social distancing, but she'll get to see

8    what she wants to see, if that's what she wants to do.

9           And, you know, we'll be pointing out where various

10   people are going to sit, and so she'll have a better

11   understanding of what that leads to as well.  I think, maybe

12   that ruminates too much.  If she wants to be there, she can be

13   there.  If Mr. Correia wants to be there, he can be there, or

14   not.  All pretrial stuff.  Okay?

15          MR. RANKIN:  Thank you.

16          MR. REDDINGTON:  Thank you.

17          THE COURT:  All right.  So we'll be in recess and see

18   you in person on the 23rd.  Thank you.

19               (Adjourned, 12:15 p.m.)

20

21

22

23

24

25

1                   CERTIFICATE OF OFFICIAL REPORTER

2

3            I, Kelly Mortellite, Registered Merit Reporter

4     and Certified Realtime Reporter, in and for the United States

5     District Court for the District of Massachusetts, do hereby

6     certify that the foregoing transcript is a true and correct

7     transcript of the stenographically reported proceedings held in

8     the above-entitled matter to the best of my skill and ability.

9                        Dated this 21st day of June, 2021.

10

11                   /s/ Kelly Mortellite

12                   _____

13                   Kelly Mortellite, RMR, CRR

14                   Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25