UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

No. 18-CR-10364-DPW

_____

UNITED STATES

v.

GENOVEVA ANDRADE,
Defendant

_____

## DEFENDANT'S MOTION TO STRIKE GOVERNMENT'S SENTENCING MEMORANDUM

## INTRODUCTION

On or about February 22, 2022, the government entered into a plea agreement with the defendant (Doc. 392). That agreement constituted "a binding promise by the government and... an inducement for the guilty plea...." *United States v. Gonczy,* 357 F. 3d 50, 53 (1ˢᵗ Cir. 2004). Eight days later, on March 2, 2022, the government filed a sentencing memorandum (Doc. 398), which "undercut if not eviscerated," the terms of that plea agreement. *See Gonczy*, 357 F. 3d at 54. In effect, the government "took away with the left hand what [it] had given with the right." *United States v. Canada,* 960 F. 2d 263, 270 (1ˢᵗ Cir. 1992), *quoting United States v. Voccola*, 600 F. Supp. 1534, 1537 (D. R.I. 1985) (Selya, J).

Here, as in *Canada*, the District Court is "intimately familiar with the case, and it may seem unlikely that the sentence [will] come out any differently whatever the Assistant United States Attorney did or did not do." *Canada*, 960 F. 2d at 270. "Nonetheless, the government owes a duty to adhere to the bargain it has made." *Id.* By the same token, the Court has a responsibility not to countenance such sharp and underhanded practices which tear at the very fabric of our system of

criminal justice.  Accordingly, for the reasons set forth below, the government's sentencing memorandum should be stricken.

## I.      THE PLEA AGREEMENT.

The plea agreement provides that the defendant will plead guilty to a single false statement ("Statement 3") specified in Count 26 of the Second Superseding Indictment and that all of the remaining counts will be dismissed.  Furthermore, the plea agreement sets forth the parties' agreement that the defendant's total offense level under the Guidelines is 4 (resulting in a guideline sentencing range of 0-6 months imprisonment).  The plea agreement further states that the parties jointly agree to recommend a sentence of incarceration for a period of time-served (1 day), to be followed by 12 months of supervised release.  Such a sentence would fall at the bottom of the agreed-upon guideline sentencing range.

## II.     THE GOVERNMENT'S SENTENCING MEMORANDUM.

### A.      "The Offense Conduct."

At the defendant's sentencing hearing in June 2021, the Court advised the parties of its view that a defendant convicted of public corruption charges would ordinarily require some period of incarceration, in the absence of compelling circumstances.  With that in mind, one would have thought that the government might have offered some explanation for why it once again recommends a non-incarcerative sentence.  Instead, the government paints the defendant as an active, willing participant in a "modern day Tammany Hall," a person who acted as the Mayor's "gatekeeper," his "closest confidant," the "second most powerful public official in Fall River."  The hyperbole in the government's sentencing memorandum exceeds the government's comment at the Correia trial that she was the Mayor's consigliere. While that rhetoric might fit nicely into a scorching closing

argument, it certainly does not belong in a sentencing memorandum supporting a recommendation of time served.

Most of the Government's Sentencing Memorandum (pp. 1-4, 6) is spent detailing what it characterizes as "The Offense Conduct."   Although it agreed that Andrade would plead guilty to a single false statement charge and dismiss all of the remaining charges against her, the government proceeds to lay out all of those other charges as though they were a part of the offense conduct she is to be sentenced for, even though they are all being dismissed.   For example, the government claims that Andrade stood silent while marihuana vendors were shaken down in her presence.   Those allegations have nothing to do with the count of conviction and are not relevant conduct set forth in the Presentence Report.

The government also seeks to convince the Court that Andrade did participate in an extortion scheme in which she kicked back a portion of her salary to Correia by pointing to statements she made during her plea colloquy on December 14, 2020.   Yet, as this Court has previously made clear, those statements may not be used against Andrade since that plea was ultimately rejected.   The government's reliance on such statements is clearly improper.

Finally, and more generally, the government's overall presentation of Andrade's "offense conduct" is to portray her as Correia's "closest confidant" who participated in his sordid misdeeds and should be viewed as such by the Court for purposes of sentencing.   According to the government, "this case is not about a single, isolated, false statement.  This case is about Andrade's betrayal of her public office."  Gov. Mem. at 4.

To be sure, the government does mouth the explicit terms of the plea agreement in asserting that Andrade's offense level is 4 and recommending time served.  Thus, while passionately arguing

3

that Andrade should be sentenced as a thoroughly corrupt individual who participated in multiple criminal schemes at the highest level of local government, it simultaneously purports to advocate a non-incarcerative sentence.   There is clearly something wrong with this picture.

      **B.**     **Guideline Calculation.**

While paying lip service to its agreement that Andrade's total offense level under the Guidelines is 4, making her guideline sentencing range 0-6 months imprisonment, the government refuses to object to Probation's determination that Andrade's total offense level is actually 21, making her guideline sentencing range 37-46 months imprisonment.  Indeed, the government spends fully half of its sentencing memorandum (pp. 4-7) seeking to defend Probation's calculation based on its erroneous application of the cross reference provision set forth at U.S.S.G §2B1.1(c)(3) and its use of the bribery guideline to ascertain Andrade's base offense level.

Apart from clearly contradicting the position it took in its solemn plea agreement, as demonstrated  below, the government's argument also fails on the merits.  The government  cites four unpublished circuit court decisions which it claims disagree with the cases cited by Andrade in her previously-filed objections to the PSR.  Gov. Mem. at 5-6.  In fact, none of the those four cases construes §2B1.1(c)(3), and only one of them discusses that provision at all.

In *United States v. Nguyen,* 801 F.App'x 788 (D.C. Cir. 2000) (*per curiam*) (*unpublished*), the defendant was convicted at trial of a false statement count and acquitted of two other counts.  At sentencing, the district court relied on acquitted conduct, applied §2B1.1(c)(3), and used the obstruction of justice guideline.  The defendant argued on appeal that the sentencing court committed constitutional error in considering acquitted conduct.  The D.C. Circuit rejected that claim without discussing the cross reference provision at all.

Similarly, in *United States v. Alatrash,* 460 F.App'x 48 (6th Cir. 2012)(*unpublished*), the defendant was convicted at a joint trial of false statements.  The sentencing court applied the §2B1.1(c)(3) cross reference and used the obstruction of justice guideline.  According to the Sixth Circuit, the defendant "fails to explain how the district court erred in calculating the guidelines range, nor does she offer an alternative calculation.  She merely argues that the resulting offense level is 'unreasonable'...." *Id.* at *5.  The decision contains no discussion or analysis of the cross reference provision.

The third case relied upon by the government is *United States v. Carpenter,* 576 F.App'x 610 (7th Cir. 2014) (*unpublished*).  There, the defendant, a police officer, allegedly coerced a woman to have sex with him and then lied about it.  He pled guilty to having made a false statement.  At the sentencing hearing, the victim testified that she was coerced.  The district court found her credible, applied the §2B1.1(c)(3) cross reference, and used the civil rights violation guideline.  On appeal, the defendant argued that the district court's finding of coercion was erroneous.  There was no analysis or discussion of the cross reference provision by the court of appeals.

The only one of the four appellate cases cited by the government which discusses the cross reference provision at all is *United States v. Ochoa,* 291 F.App'x 265 (11th Cir. 2008) (*per curiam*) (*unpublished*).  The defendant there was a paid informant who provided false information about others.  He was charged with two counts of making false statements and convicted of one at trial.  The sentencing judge applied the §2B1.1(c)(3) cross reference and used the obstruction of justice guideline.  There was no objection.

On appeal, the defendant argued for the first time that the cross reference did not apply.  The court of appeals employed a plain error standard of review and affirmed.  It stated:

> Even if there were error here, it would not be plain because it would
> not be clear under current law. The explicit language of the cross
> reference provision contained in §2B1.1(c)(3) does not itself resolve
> the issue that [the defendant] has raised, and there is no controlling
> precedent from the Supreme Court or from this Court directly
> resolving it.

Id. at *3.

In its sentencing memorandum, (at  5, n. 4), the government claims that the Court in *Ochoa*

declined to follow *Genao* and *Bah*. In reality, all the Court said regarding *Genao* was:

> *Genao* is not a decision of the Supreme Court or of this Court;
> therefore, it cannot establish that the district court plainly erred by
> applying the cross-reference in §2B1.1(c)(3).

*Ochoa,* at *4. The *Ochoa* court did not purport to interpret or construe the cross reference provision

itself. In sum, the government's feeble effort to defend Probation's erroneous application of

§2B1.1(c)(3) by relying on unpublished legal precedent which casts no light on that provision fails.

The government's remaining argument in support of Probation's miscalculation is that the

indictment really does include all of the elements of all of the other offenses because Count 26

incorporates by reference paragraphs 83 through 112 of the indictment. Gov. Mem. at 6. This

argument borders on the  frivolous. Where the defendant has agreed to plead to a single false

statement charge and the government has agreed to dismiss all of the other counts, surely the

formalistic incorporation language contained in virtually every indictment cannot equate to meeting

the requirement that the conduct set forth in the count of conviction establishes the elements of those

other offenses. Andrade agreed to plead to a single false statement count and nothing more; the

government agreed to that as well.

III.    **BREACH OF PLEA AGREEMENT BY GOVERNMENT.**

During the half-century since *Santobello v. New York,* 404 U.S. 257 (1971) was decided,

courts have been vigilant in prohibiting the government from circumventing the terms of a plea

agreement, either explicitly or implicitly.  As Judge Selya wrote in *Voccola*, 600 F. Supp. at 1537,

"*Santobello* and its progeny proscribe not only explicit repudiation of the government's assurances,

but must in the interests of fairness be read to forbid end-runs around them."

The First Circuit has addressed such government misconduct in a number of cases, including

*United States v. Canada*, 960 F. 2d 263 (1ˢᵗ Cir. 1992) and *United States v. Gonczy,* 357 F. 3d 50 (1ˢᵗ

Cir. 2004).  In *Canada*, the prosecutor at sentencing "paid lip service to the negotiated agreement,"

but "significantly undercut the government's promises in his sentencing argument."  960 F. 2d at

268-269.  In concluding that the government had failed to perform according to its agreement, the

court stated that the prosecutor's "overall conduct must be reasonably consistent with making such

a recommendation, rather than the reverse."  *Id.* at 269.  The Court added: "In brief, the Assistant

United States Attorney was not at liberty to cut off the government's agreement at the knees."  The

case was remanded for resentencing.

In *Gonczy*, the prosecutor did advocate for the sentence as provided in the plea agreement.

However, as the court of appeals explained:

> In this case, the substance of the prosecutor's argument at the
> sentencing hearing can only be understood to have emphasized
> [defendant's] wrongdoing and his leadership role in the offense,
> advocating for the imposition of a higher sentence than the agreed-
> upon term....

357 F. 3d at 53.  The government argued that there was no breach of the agreement because the

prosecutor did advocate for the agreed-upon sentence, but the court of appeals disagreed:

> The initial recommendation in [defendant's] case was undercut, if not eviscerated, by the AUSA's substantive argument to the district court..... While paying lip service to a term of 70 months' imprisonment, the AUSA substantively argued for a sentence at the higher end of the guidelines. In doing so, the government violated the plea agreement it entered into....

*Id.* at 54. The case was remanded for resentencing.

## IV.     APPLICATION OF LAW TO FACTS.

The sentencing memorandum filed by the government in this case is a blatant violation of the plea agreement. Both in its characterization of Andrade's "offense conduct" and in its defense of Probation's erroneous and much higher guideline calculation than the one the parties agreed to, the government clearly suggests to the Court that a sentence above the one it agreed to recommend is warranted. As in *Canada*, the government "took away with the left hand what [it] had given with the right." As in *Gonczy*, the government pays "lip service" to the negotiated agreement, but undercuts it by its argument. After lulling Andrade to agree to plead guilty in consideration for agreeing to dismiss all counts except a single false statement charge and to recommend a non-incarcerative sentence, the government's vigorous and protracted argument clearly suggests that a harsher sentence is warranted. It would be hard to miss that message. That unmistakable message violates the plea agreement in a manner which has tainted the process.

This Court should not countenance such a clear abuse of the criminal justice system. For better or for worse, plea agreements have become an essential part of that system. Plea agreements are formal contracts. It is thus  critical that both parties be held to a standard of good faith in adhering to their commitments under such agreements. Otherwise, they are not worth the paper they are written on.

The government's sentencing memo constitutes a clear breach of its obligations under the plea agreement.  Accordingly, that sentencing memorandum should be stricken.  Moreover, the government should be precluded from making any similar arguments to the Court at the forthcoming change of plea/sentencing hearing scheduled for March 7, 2022.

Respectfully submitted,

**GENOVEVA ANDRADE**

By her attorneys,

/s/ Charles W. Rankin

Charles W. Rankin, BBO No. 411780
crankin@rankin-sultan.com
James L. Sultan, BBO #488400
jsultan@rankin-sultan.com
Rankin & Sultan
1666 Massachusetts Avenue, Suite P-16
Lexington, MA 02420
(617)720-0011

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the Electronic Filing System (CM/ECF) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on March 4, 2022.

/s/Charles W. Rankin
Charles W. Rankin

9