UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 18-10364-DPW |
| ) | |
| GENOVEVA ANDRADE, ) | |
| ) | |
| Defendant ) | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

Defendant Andrade has filed a Motion to Strike Government's Sentencing Memorandum (Dkt. No. 401, "Def. Mot."), claiming that the government breached its duties under the Plea Agreement between the parties, which was dated February 17, 2022 (Dkt. No. 392, "Plea Agmt."). Because the government affirmatively, and repeatedly, recommended the agreed-upon sentence of time served, 12 months' supervised release, and a $10,000 fine for Andrade in its Sentencing Memorandum; and because the government has committed no breach of the Plea Agreement, the Def. Mot. should be denied.

A sentence of time served, 12 months' supervised release, and a $10,000 fine, for the reasons set forth below and under all the circumstances, is a "sentence sufficient but not greater than necessary" to achieve the purposes of the sentencing statutes. As explained below, the government's Sentencing Memorandum was intended to provide the Court with a complete picture of the defendant's conduct and the applicable law, consistent with counsel's duty to the Court. There was no implicit message the government intended to convey to the Court that a sentence more severe than the one set forth above was warranted and the government respectfully asks the Court not to draw any such inference.

The Plea Agreement

Key provisions in the Plea Agreement include the following clauses:

- "The parties agree, based on the following calculation, that Defendant's total "offense level" under the Guidelines is 4." Plea Agmt. § 3.

- "The parties agree to recommend the following sentence to the Court: a) incarceration for a period of time-served, to be followed by 12 months of supervised release; b) a fine of $10,000; and c) a mandatory special assessment of $100 …." Plea Agmt. § 4.

- **"Nothing in the Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case."** Plea Agmt. § 3 (emphasis added).

Relevant Caselaw

"Basic contract principles apply to the construction of plea agreements." *United States v. Newbert*, 504 F.3d 180, 185 (1st Cir. 2007) (internal citations omitted). "Ambiguities in plea agreements are construed against the government." *Id.* at 185, *quoting United States v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988). Moreover, "the government owes a duty to adhere to the bargain it has made." *United States v. Canada*, 960 F.2d 263, 270 (1st Cir. 1992). "This is not to suggest that prosecutors need adhere to any particular form of words in 'recommending' an agreed sentence, but their overall conduct must be reasonably consistent with making such a recommendation, rather than the reverse." *Id.* 960 F.2d at 269.

In *Canada*, the plea agreement provided that the government would "recommend that the district court impose a sentence of 36 months incarceration … [a]nd the government would inform the Probation Department and the court of 'this agreement … [and] the full nature and extent' of Canada's cooperation." *Id.* at 264. At the *Canada* plea hearing, however, the government did neither. Instead, the prosecutor "never herself affirmatively recommended a 36 month sentence and her comments seemed to undercut such a recommendation." (*e.g.*, the prosecutor advocated for "a substantial period of incarceration," a "lengthy period of incarceration," and to send a "very

2

strong message;" the prosecutor also acknowledged that she was "stuck" with the plea agreement.). *Id.* at 268-269 (emphasis added).  With respect to cooperation, the First Circuit found that the prosecutor's "silence" during this portion of the sentencing hearing left an "ominous ring." *Id.* at 271.

Finding that the government's conduct during the sentencing hearing amounted to nothing more than paying "lip service" to the negotiated agreement and "immediately [taking] away with the left hand what [she] had given with the right," the *Canada* Court concluded that the prosecution's conduct "amounted to non-performance of its plea agreement with Canada," and remanded the case for resentencing. *Id.* at 270-272.

*Canada*, however, did not preclude the government from providing courts with relevant information at sentencing.  In *Canada*, the First Circuit recognized "the public's paramount interest in candid and truthful testimony by prosecutors."  906 F.2d 263, 270, n.7.  This concept has been reinforced by the Court of Appeals.  "At times, the government's obligation to adhere scrupulously to a plea agreement collides with its equally firm obligation to provide relevant information to the sentencing court.  When these commitments conflict, we look to the plea agreement's terms 'to help resolve the [] competing tugs." *United States v. Irizarry-Rosario*, 903 F.3d 151, 154 (1st Cir. 2018) (internal citations omitted).  In *Irizarry-Rosario*, the defendant, who was sentenced to an 84-month sentence, claimed that the government's multiple references to the large quantity of weapons and ammunition that the defendant possessed effectively undermined its promise to recommend a 60-month sentence on one count and a 12-month sentence on the second count, to which he pled.  *Id.* at 154.  The First Circuit rejected the defense claim.  Finding that the government stated its prison recommendation "without any reservation," the Court ruled that the "government was entitled to explain that recommendation to the sentencing judge" and

3

found that such conduct "reflect[ed] adherence to the plea agreement, not a breach." *Id.* at 154-155.

Argument

The defendant's attempt to paint the government's Sentencing Memorandum (Dkt. No. 398, "Gov. Sen. Memo") as a *Canada* violation misses the mark for multiple reasons.  First, the conduct in *Canada* bears no resemblance to the government's sentencing submission.  In *Canada*, the prosecutor "never herself affirmatively recommended [the agreed upon] sentence," 960 F.2d at 268-269 (emphasis added).  This is not the case in the government's sentencing submission.  In the government's Sentencing Memorandum, the government affirmatively recommended the agreed-upon non-incarceratory sentence on no fewer than three separate occasions, *see* Gov. Sen. Memo. at 1, 7, 8, and gave reasons why it was seeking its "non-incarceratory" sentence, *id.* at 7.

Second, the government is firmly on the record as affirmatively recommending and advocating strongly for this non-incarceratory sentence.  In an earlier sentencing submission, the government recommended the same exact disposition on a "C-plea," pursuant to which the defendant, at the time, had agreed to plead guilty to six counts of conviction when the defendant's Guidelines offense level calculation was 27.  *See* Dkt. No. 252 at 1, 3-4 (gov't affirmatively recommends the same non-jail sentence on two occasions).  The government then recommended the same non-incarceratory sentence at defendant Andrade's sentencing hearing on June 10, 2021.  Jun. 10, 2021 Tr. 18-19.  The government submits that it would be materially inconsistent, if not seriously questionable, if the government were to recommend a harsher sentence for the defendant with the case in its present posture where the underlying facts remain unchanged from the June 10, 2021 hearing, and the defendant is now pleading guilty to five fewer counts.

4

Third, the government's description of Andrade's relevant conduct is explicitly permitted by the terms of the Plea Agreement. "Nothing in the Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case." Plea Agmt. § 3. In Andrade's sentencing memo, the defense has attempted to portray the defendant as a victim (Dkt. No. 396 at 5), "who did not benefit financially or seek to do so," (*id.* at 10), and who, because of "her belief in [the Mayor]" and "her personal affection for him, … [gave] him a substantial portion of her salary in response to his requests for financial help." (*Id.* at 5). The facts of this case are not the exclusive province of the defense.

Even the *Canada* Court recognized "the public's paramount interest in candid and truthful testimony by prosecutors." 906 F.2d 263, 270, n.7. Further, the First Circuit has recognized the natural, and at times inevitable, tension between the agreed-upon recommendation and relevant information to sentencing. *Irizarry-Rosario*, 903 F.3d 151 at 154. The fact that the defendant takes umbrage with the government's sentencing submission does not change the fact that the government was entitled to provide the Court with accurate and complete information about the defendant's conduct, in accordance with the explicit terms of the Plea Agreement.

Fourth, the government has affirmatively agreed on no fewer than four times in its sentencing submission that the Guidelines offense level for the defendant is 4. (Dkt. No. 398 at 1, 4, 7). The fact that the government does not agree with the defendant's legal interpretation of USSG § 2B1.1(c)(3) and believes it to be an unresolved issue before the First Circuit, subject to debate among other federal courts, is not a violation of the Plea Agreement. The government has agreed that, pursuant to USSG §§ 2B1.1(a)(2) and 3E1.1(a), the defendant's total Guidelines offense level is 4. Nowhere does the Plea Agreement bar the government from conducting its own legal research pertaining to USSG § 2B1.1(c)(3).

Indeed, the government has anticipated that the Court may inquire as to the government's view of 2B1.1(c)(3)'s application to this case. As officers of the Court, with an ethical duty of candor to the Court to "not knowingly … (1) make a false statement of fact <u>or law</u> to a tribunal," Mass. Sup. Jud. Ct. RPC § 3.3(a) (emphasis added), the government was entitled to conduct legal research to give the Court its view of the law of 2B1.1(c)(3), which it has done in its Sentencing Memorandum. This, too, is covered by Section 3 of the Plea Agreement ("Nothing in the Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office <u>with accurate and complete information regarding this case</u>.") (emphasis added). The law of this case is not the exclusive province of the defense.

<u>Conclusion</u>

As explicitly stated in the government's Sentencing Memorandum, and without reservation, <u>the government recommended a sentence of time served, 12 months of supervised release, and a $10,000 fine</u> for defendant Andrade. (Dkt. No. 398 at 1, 7-8.) Because of Andrade's lack of criminal history, her personal history and characteristics, the nature and circumstances of the offense, the lack of further need of specific deterrence, her health, and the fact that she was previously immunized by the government, the recommended sentence – though non-incarceratory – is meaningful, consequential, and comports with the requirements of 18 U.S.C. § 3553. *Id.* at 7. The government believes that this, plus the status of being a convicted felon, represents a significant punishment for this defendant. As such, the government was entitled to provide the Court with the facts and legal argument in its Sentencing Memorandum in support of the agreed-upon sentence of <u>time served, 12 months of supervised release, and a $10,000 fine</u>. The government's repeated assertion in its sentencing submission that it recommended a sentence of <u>time served, 12 months of supervised release, and a $10,000 fine</u> for the defendant was not "lip

service." It was express performance of the terms of the Plea Agreement. It is the sentence that the government believes the Court should order, and recommends that the Court order, in this case.

Therefore, and for all the foregoing reasons, the government opposes defendant's Motion to Strike Government's Sentencing Memorandum (Dkt. No. 401).

                Respectfully submitted,

                RACHAEL S. ROLLINS
                United States Attorney

       By: */s/ Dustin Chao*
                DUSTIN CHAO
                DAVID G. TOBIN
                Assistant U.S. Attorneys

**Certificate of Service**

I certify that, on March 4, 2022, this document was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                */s/ Dustin Chao*
                Dustin Chao